# CHARLESTON.

CLARK *et al.* v. THE HENDRICKS COMPANY, LIMITED, *et al,* McNEELEY *v.* SAME.

Submitted September 15, 1904. Decided December 20, 1904.

1. COMMISSIONERS IN CHANCERY.—*Exceptions.—Re-Committal.*
    Where a decree is based upon a commissioner's report, in which many complicated accounts are involved, and to which numerous exceptions are filed, pointing out various mistakes in the calculations, which run through the whole statement and report, and affect the results thereof; and the exceptions are overruled and the report confirmed, some of the mistakes being admitted, but others thus pointed out, being so connected and intermingled with the whole statement and report that they cannot be segregated and corrected without a re-statement of the accounts, which is impracticable here, this Court, for the reasons stated, will reverse such decree; and, without passing upon them *seriatim,* will sustain the exceptions and remand the cause with instructions to re-commit it to a commissioner. (p. 539).

Appeal from Circuit Court, Tucker County.

Bill by C. B. Clark and others against the Hendricks Company, Limited, and others, and by W. O. McNeeley against the same defendants. Decrees for plaintiffs, and defendants appeal.

*Reversed.*

C. W. DAILEY, for appellants.

CONLEY & SMITH and W. B. MAXWELL, for appellees.

MILLER, JUDGE:

The Hendricks Company, Limited, was incorporated under the laws of this State on the 21st day of June, 1892, for the purpose of carrying on a wholesale and retail mercantile business. The incorporators were J. E. Poling, J. A. McNeeley, W. O. McNeeley, C. B. Clark and T. W. Ryan. Its principal office was at Hendricks in Tucker county.

The capital stock subscribed was $15,000.00, in shares of $100.00 each, par value; but the authorized capital was $50,-000.00. Acts 1893, 207 Corp. The stock was afterwards increased to $20,400.00. The company did an extensive business and acquired a large amount of property, both real and personal. It also became indebted to various persons and firms, in sums, the aggregate of which was not definitely known to the stockholders at the date next below mentioned.

By their contract in writing, bearing date on the 18th day of May, 1897, severally signed by them, J. E. Poling, J. A. McNeeley, W. O. McNeeley, C. B. Clark, Alice Clark and T. W. Ryan, the then stockholders of the company, determined and agreed to discontinue the business of the corporation, as such, from and after that date; wind up its affairs; provide for the payment of its debts and liabilities; and also for a division, among its stockholders, of its capital and property, after the payment of its debts and liabilities, it being then believed by the stockholders that the solvent claims due to the corporation were much more than sufficient to pay all of its indebtedness.

It is, among other things, stipulated in the contract that the following provisions be and were thereby made for the division of the property of the corporation, among its stockholders, and also for the payment of its debts and liabilities: First, That J. E. Poling and T. W. Ryan should have and hold as their own from that date, with respective interests therein, as between themselves, to be proportioned, according to their respective interests in the corporation, and subject to their assumption and payment of certain enumerated debts of the company, the payment of which was therein mentioned as assumed by

them—the entire stock of merchandise, belonging to the corporation, situated and being in the store and ware rooms of said corporation at Hendricks in the county of Tucker, and at Harman, in the county of Randolph, together with all fixtures belonging thereto as theretofore listed or inventoried, etc.; and also certain claims due to the company, which were thereby transferred to Poling and Ryan, without recourse upon the company and which claims amounted to the sum of $4,504.52. Poling and Ryan were also to have and hold as their own, in the proportion aforesaid, as between themselves, the house and lot in Hendricks, called the John W. W. Moore property; all amounts due from Moore to the company on notes and account, but without recourse; and all bark and pulp wood contracts then held by the company, said Poling and Ryan thereby assuming all liabilities of the corporation in relation to said contracts, accruing after 12 o'clock, M., on the 18th day of May, 1897. Second. That J. A. McNeeley, W. O. McNeeley, C. B. Clark and Alice Clark should have and hold as their own from that date, all the real estate of said corporation, wherever situated, (except the Moore house and lot above mentioned), and all the lumber belonging to said corporation, with respective interests therein in all of said property, as between themselves, to be proportioned according to their respective interests in said corporation. It was further stipulated that the real estate of the corporation should by proper deeds be conveyed to the persons respectively entitled thereto, under the agreement, whenever the debts of the company should all be settled, and that in the meantime none of said parties shall in any way convey or encumber any of said real estate, except expressly subject to the debts of the corporation. In consideration of the premises, Poling and Ryan, in and by the agreement, assumed the payment of certain specified debts of the company, amounting to $15,004.52, and also agreed to secure, for the company, releases to it from all liability, on account of said debts, so assumed by them. It was further agreed that Poling and Ryan shall not be required to pay more than $15,004.52, as consideration for that part of the property and rights to be acquired by them under the agreement. The other accounts and claims due the company were placed in the hands of Poling to be by him collected in the name of the corporation, and the proceeds thereof

paid out on its debts and liabilities, other than those assumed
by Poling and Ryan as aforesaid. It was further agreed by
the parties that, if the amount collected on claims owing to the
company, (exclusive of those transferred to Poling and Ryan,)
should prove insufficient to satisfy the debts of the corporation,
(exclusive of those assumed by Poling and Ryan,) then the
parties to the agreement shall pay the remainder of such debts,
each paying such proportion of such unpaid debts as the stock,
owned by him or her, bears to all the capital stock of the com-
pany.

At the execution and date of said agreement, the stock of the
corporation was owned and held as follows:

| | |
|---|---:|
| J. E. Poling, fifty shares | $ 5,000.00 |
| J. A. McNeeley, fifty shares | 5,000.00 |
| W. O. McNeeley, fifty shares | 5,000.00 |
| C. B. and Alice Clark, fifty shares | 5,000.00 |
| T. W. Ryan, four shares | 400.00 |
| *Total*, two hundred and four shares | $20,400.00 |

At the date of the decree appealed from, the stock was owned
and held as follows:

| | |
|---|---:|
| J. E. Poling, fifty shares | $ 5,000.00 |
| T. W. Ryan, four shares | 400.00 |
| J. E. Poling & Co., fifty shares | 5,000.00 |
| W. O. McNeeley and W. S. Michael, one hundred shares | 10,000.00 |
| *Total*, two hundred and four shares | $20,400.00 |

C. B. Clark and others, the then stockholders of the cor-
poration, except said McNeeleys, filed their bill in the first
mentioned cause against said corporation, J. A. McNeeley, W.
O. McNeeley, and also many others who were its creditors;
and, in the second described suit, said W. O. McNeeley filed
his bill against the corporation and its stockholders, except
the plaintiff, and also against its creditors. The object of the
two suits was and is practically the same, that is to say, the
bills therein pray that a receiver be appointed to take charge of
all of the property of the corporation, both real and personal;
that its indebtedness be ascertained and paid; that its businesss
be closed up, and the corporation dissolved; that the property
taken by the stockholders, respectively, be charged with its
proper proportion of the indebtedness; and that the remaining

assets be divided among the stockholders, in the proportion that each stockholder's stock bears to the stock; and for general relief.

The indebtedness of the corporation appears to have been afterwards paid, in part, from its assets, and, in part, by the stockholders. During the progress of the suit, up to that time, two reports had been made by Jeff Lipscomb, a commissioner in chancery, and filed in said cause. But no settlement having been made between the stockholders and the corporation as to their indebtedness to it, or between themselves, under said contract, the court, on the 20th day of June, 1901, again referred said causes to Lipscomb, with directions to ascertain and report upon various matters specified in the order of reference, of that date, and also any other matter deemed by him pertinent, or being pertinent, that might be required by any of the parties.

Acting under this order, the commissioner made up, and, on the 3rd day of June, 1902, completed a statement and report, which consists of 109 pages of the printed record; and, having retained it in his office for ten days thereafter, he, on the 13th day of the same month, returned it with all of the evidence taken by him upon the hearing before him to the court. To this report, W. O. McNeeley and W. S. Michael made and endorsed thereon one, and J. E. Poling, J. E. Poling & Co., and T. W. Ryan, twenty-seven, several exceptions, which were afterwards increased by them to thirty-four.

One year after said report had been returned to the court, and exceptions thereto made and endorsed as aforesaid, to-wit: On the 13th day of June, 1903, the said commissioner made and returned to the court, another statement in writing, signed by him as commissioner, consisting of fourteen pages of the printed record, which is styled by him as "The answer of Commissioner Jeff Lipscomb to the exceptions filed to his report, by J. E. Poling, J. E. Poling & Co. and T. W. Ryan, in the chancery causes of *W. O. McNeeley* v. *The Hendricks Company, Limited,* and others, and *C. B. Clark* v. *Same,* filed in the circuit court of Tucker county."

The Commissioner, in his answer, which is, in substance and effect, a new or additional statement and report, reviews his former report, and the several exceptions thereto; and thereby attempts to explain the same, and to correct the errors therein.

He says: "Relative to exception No. 2 I find that there is an error of $18.00 which will be hereafter adjudicated." He also says: "Relative to this exception (No. 7) I desire to state that the report does plainly show how the commissioner arrived at his conclusions,. and these exceptors do not show what other items should go into the findings of the commissioner in order to make a greater amount than ascertained by him, due J. E. Poling & Company from the Clark interest, but in order that the court *may not be confused,* I will re-state the items, going into the second finding and aspect of this case." He then re-states matters, making six findings of $8,000.74; $290.71; $11,432.-04; $7,546.98; and $7,942.85, respectively. He further says: "But from an inspection of said accounts, I find an error in both the accounts of W. O. McNeeley and C. B. Clark in the matter of the Rumbarger draft as follows: W. O. McNeeley is improperly credited with the item of $964.00, that item being the interest of W. O. McNeeley and C. B. Clark in the Rumbarger draft; said W. O. McNeeley was credited four hundred and eighty-two dollars, his one half of the Clark and McNeeley part of said draft; said W. O. McNeeley is charged with the whole of said draft of $1,049.36 (Rumbarger draft) which is wrong because he did not get the draft, and making this correction said W. O. McNeeley's account should stand credit $6,227,21 instead of $6,142.88. He then, according to this theory of the case, corrects this error by his answer. He again says: "I also find a mistake in the account of W. O. McNeeley, a credit by stock account, $1,000.00, which should be eliminated from my original finding, and the same, so corrected, would leave the account of W. O. McNeeley stand $5,227.21, instead of $6,-227.21. *These errors will run through all the settlements."* He follows this with a re-statement, consisting of four pages, upon that branch of his former report. To this answer, or additional report, exceptions were also filed, and its consideration objected to by J. E. Poling, J. E. Poling & Co., and T. W. Ryan.

On the 18th day of June, 1903, five days after Commissioner Lipscomb's "answer" was filed, the said two causes came on to be again heard together upon the papers theretofore read, former orders and decrees therein, and upon the report of commissioner, Jeff Lipscomb, "to which there is one exception by W. O. McNeeley and H. S. Michael, and thirty-four ex-

·ceptions by J. E. Poling, J. E. Poling & Co., and T. W. Ryan; the answer in writing by said commissioner Jeff Lipscomb to .said exceptions, and exceptions in writing thereto by J. E. Poling & Co. and T. W. Ryan; and were argued by counsel; upon ·consideration whereof, the court doth overrule the exceptions to said answer, and all of said exceptions, except as to the item of the $1,000.00 in the account of W. O. McNeeley, and also ·except as to the other errors, corrected by said commissioner Lipscomb, in his answer to said exceptions; and, as corrected, the said report is confirmed. * * * It is further adjudged, ·ordered and decreed that J. E. Poling do pay to W. O. McNeeley and W. S. Michael the sum of $6,542.77 with interest thereon from the 12th day of June, 1903. That W. O. McNeeley and W. S. Michaels do pay to J. E. Poling, T. W. *Ryand* and A. H. Harper, partners under the firm name and style of J. E. Poling & Company the sum of $2,486.11 with like interest thereon; that T. W. Ryan do pay to W. O. McNeeley and W. S. Michael the sum of $421.65 with like interest thereon; that J. E. Poling do pay to J. E. Poling, T. W. Ryan and A. H. Harper, partners under the firm name and style of J. E. Poling & Company, the sum of $2,777.80 with like interest thereon; that T. W. Ryan do pay to J. E. Poling, T. W. Ryan and A. H. Harper, partners under the firm name and style of J. E. Poling & Company, the sum of $310.15 with like interest thereon, and that J. E. Poling do pay to T. W. Ryan the sum of $69.46 with like interest thereon and the said parties and each of them have leave to enforce payment of the amount so decreed to them respectively by execution or other *approproate* proceeding, and the rights of the parties among themselves are finally adjudicated and said corporation dissolved by this decree."

From this decree, J. E. Poling, J. E. Poling & Co. and T. W. Ryan appeal, and assign several grounds of error therein. Among other things they aver that W. O. McNeeley, J. S. McNeeley and C. B. Clark were each allowed $2,500.00 against the corporation for services as directors thereof, and that said allowances were directed to be so made, after the 18th day of May, 1897; that said alleged error, and the $1,000.00 error which is admitted to be such by the commissioner in his answer, enter into all of his calculations and findings, relating to the said settlement among the stockholders, and effect the results

thereof; that the final decree confirms the report, except so far as changed by the commissioner's answer as aforesaid; and that no finding in the several different statements of the commissioner warrants the decree in favor of McNeeley and Michael against J. E. Poling for $6,542.77. The answer of the commissioner, which was by him deemed necessary to explain the errors in his former report, pointed out by the exceptions thereto, is if anything, a new or additional report. It was made up and returned to the court, so far as the record discloses, without notice to the parties, or appearance by them. It does not appear to have been required by the court, or requested by any of the parties. It was an attempted adjudication of the rights of the parties out of court without notice or appearance. No notice of its completion was given by the commissioner to the attorneys of record in said causes. It was not retained in his office ten days after its completion for examination by the parties interested, Code, chapter 129, section 7, but was returned to the court; and, within five days after its date, the said causes were heard thereon, with the report which it sought to correct. It, with the erroneous report, thus became the basis of the decree appealed from. The exceptions to this "answer" should have been sustained; the paper stricken from the record, and the cause re-committed. *Thompson* v. *Catlett*, 24 W. Va. 524; *Lynch* v. *Henry*, 25 W. Va. 416. The answer being improperly in the record, all of the errors which it attempted to correct, remain in said report, and the exceptions thereto as aforesaid, stand overruled and confirmed by the decree.

The court finds that at the date of the decree, the stock of the corporation was held as follows, to-wit: by W. O. McNeeley and W. S. Michael, 100 shares; by J. E. Poling, 50 shares; J. E. Poling & Co., 50 shares; and by T. W. Ryan, 4 shares.

In his answer or explanation, the commissioner says:

"J. E. Poling stands credited with fifty shares of stock in the following items, in his account, and all the credit he is entitled to under any consideration, to-wit:

By D. & P. note taken up by him...............$ 500.00
By D. & P. note taken up by him...............  500.00
By D. & P. note taken up by him...............  500.00
By D. & P. note taken up by him...............  500.00
By bills payable ..............................  500.00
By stock account ............................ 1,000.00"

These several items amount to only $3,500.00, an apparent. discrepancy in the statements of $1,500.00. All of the parties,. and also the decree, treat the shares of stock as of the par value of one hundred dollars each, and paid up. This statement is variant from others in the record, as to the stock then held by Poling, and, if erroneous and carried into the decree, is preju-- dicial to him.

As to the alleged error on account of the allowance of $2,- 500.00 to J. A. McNeeley, W. O. McNeeley and C. B. Clark each, as special salaries to them, for services as ·directors of the· corporation, we find in the record book of the company, the fol- lowing entries:

"Hendricks, W. Va., March 15, 1893. At a meeting of the· stockholders of the Hendricks Co., Ltd., on this day and date with J. A. McNeeley in the chair and upon motion of W. O. McNeeley and seconded by C. B. Clark the following persons were re-elected directors for the ensuing year: W. O. Mc-- Neeley, J. A. McNeeley, T. W. Ryan, C. B. Clark, J. E. Poling. And the following yearly salaries were ordered allowed: W. O. McNeeley, $400.00; C. B. Clark, $400.00; J. A. McNeeley,. $300.00."

"Hendricks, W. Va., March 25, 1895. At the annual meet-- ing of *the board of directors* of the Hendricks Co., Ltd., on: this day and date with J. A. McNeeley in the chair and upon· motion of C. B. Clark and seconded by W. O. McNeeley the fol- lowing directors were re-elected for the ensuing year: T. W. Ryan, W. O. McNeeley, J. A. McNeeley, J. E. Poling and C. B. Clark. The minutes of the previous meetings having been read and passed upon and adopted and approved on motion of C. B. Clark and seconded by W. O. McNeeley, this meeting was ad-- journed *sine die.* C. B. Clark, V. P. and clerk. J. A. McNeeley,. secy., W. O. McNeeley, prest."

"March 25, 1895. On account of the income tax the fol-- lowing extra salaries were approved and directed and ordered credited to this date: T. W. Ryan, $75.00; J. A. McNeeley, $2,500.00; C. B. Clark, $2,500.00; W. O. McNeeley, $2,500.00,. and same to be credited to each party named in a separate salary account and to be finally transferred to their respective personal accounts and deducted from stock account earnings."

The Code, chapter 53, section 53, relating to joint stock

companies, declares that there shall be no compensation for services rendered by the president or any director unless it be allowed by the stockholders. The commissioner, in his answer, referring to the aforesaid allowances, says: "This statement makes the totals, as they appear on page 10 of this report, and includes the special salaries of $2,500.00 allowed to McNeeleys and Clark and other additional salary allowed on the minute books; but which had never been carried into the personal accounts of the parties." These specific allowances of $2,500.00, respectively, to the directors named, seem to be unauthorized by the statute. It will be readily seen that they are far in excess of the amounts to which the parties would have been respectively entitled, if entitled to anything upon that account, under the said resolution of March 15, 1893. The allowances, if erroneous, are prejudicial to the other stockholders. The explanation of the commissioner, given in his answer, if it could even be considered by us, is not clear; but the parties may be able to satisfactorily explain this transaction, if given an opportunity to do so. As the decree must be reversed, and the causes remanded for a re-statement and report, involving this matter with others, we refrain from expressing an opinion thereon. The foregoing excerpts are taken from the record of the proceedings had before the commissioner to show the confusion, uncertainty and errors therein. The briefs filed for appellants and appellees admit that there are errors in both the report and decree.

Without re-stating the accounts between the parties, the labor of which we are not required to perform, and which would be impracticable here, we are unable to determine whether all, or only a part of the exceptions to the report, be well taken, and also whether they reach all of the errors in the report. We are therefore of opinion that, without passing upon the matters raised by each of said exceptions, we should reverse the decree, and sustain all of the exceptions to the report of the commissioner, because of its uncertainty, and the admitted errors therein. *B. & O. R. R. Co.* v. *Vanderwerker, et al.,* 44 W. Va. 229.

The decree appealed from is, therefore, reversed and set aside; the exceptions to the report of the commissioner, and also to his "answer" to said exceptions, are severally sustained; the

said answer stricken from the record, and said causes remanded to the circuit court, with instructions to re-commit the same. to a commissioner for the ascertainment and report thereon of the following specified matters, and any others which may be pertinent, to-wit: *First.* What property, real or personal, did the Hendricks Company, Limited, own on the 18th day of May, 1897, at the time the said contract took effect, exclusive of the real estate, merchandise, accounts, &c., set apart, and transferred by the agreement to Poling, Ryan, J. A. McNeeley, W. O. McNeeley, C. B. Clark and Alice Clark, or to any or either of them. *Second.* What claims and demands were due to the corporation on that day (exclusive of those assigned to Poling and Ryan) whether from the directors of the company, or other persons; the several amounts thereof, and what disposition has been made of the same? *Third.* To whom was the corporation indebted on that day; and in what sums, exclusive of the several debts which were assumed by Poling and Ryan, in and by said agreement as aforesaid? *Fourth.* Have Poling and Ryan paid the indebtedness which they assumed for the corporation, and, if not, how much is yet due thereon? *Fifth.* What part of the indebtedness of the corporation, exclusive of the debts assumed by Poling and Ryan as aforesaid, has been paid, and by whom, and how paid? *Sixth.* After applying the assets of the corporation (not including those set apart and transferred to Poling and others as aforesaid) to its indebtedness, existing on the 18th day of May, 1897, what balance remains unpaid? *Seventh.* Who should pay such balance, and what part thereof should be paid by each person liable therefor under said agreement?

*Reversed.*