# CHARLESTON.

Baltimore & O. R. Co. v. Vanderwerker *et al.*

Submitted September 10, 1897—Decided December 8, 1897.

1. Commissioner's Report—*Exceptions—Restating Account.*

   A commissioner's report made in a cause rightly referred, on the face of which no error appears, will be presumed by the court as admitted to be correct by the parties, not only as far as it settles the principles of the account, but also in regard to the sufficiency of the evidence upon which it is founded, except in so far, and as to such parts thereof, as may be objected to by proper exceptions taken thereto before the hearing, and the court at the hearing is bound to observe this rule of equity practice ; and it is error for the court at the hearing to remodel and restate the whole account stated in such report, and enter a decree on its own statement, without reference to the account stated by the commissioner, or the action of the parties in excepting or not excepting thereto. (p. 235.)

2. Commissioner's Report—*Recommitment—Exceptions.*

 If in any case the court is not satisfied with the report of a commissioner in regard to matters not excepted to which might be affected by evidence *aliunde,* instead of remodeling the account on its own estimate of the evidence it should recommit the report, with instructions indicating its opinion, so that the respective parties might have an opportunity of meeting any objection thus suggested. (p. 235.)

3. Statute of Limitations—*Pleading—Personal Plea.*

 The plea of the statute of limitations is a personal plea, and, where a suit is instituted by a creditor to recover a debt, the debtor alone can successfully plead said statute. (p. 235.)

Appeal from Circuit Court, Taylor County.

Garnishment by the creditors of Isaac J. Vandcrwerker against the Baltimore & Ohio Railroad Company. Defendant garnishee filed a bill of interpleader. From the judgment the creditors appeal.

*Reversed.*

Chas. E. Hogg, W. A. Wade and W. R. D. Dent, for appellants.

John A. Hutchinson, for appellees.

English, Judge:

The transactions out of which this litigation grew originated in 1852–53. Isaac J. Vanderwerker was a contractor on the Baltimore & Ohio Railroad, and constructed a portion of said railroad, and while thus engaged became indebted to several parties. Prior to October, 1853, several suits had been brought against said Vanderwerker by different persons for debts claimed to be due them, in which suit said railroad company was summoned as garnishee; and in October, 1853, said company filed its bill of interpleader in the circuit court of Marion county, in order that the matter might be settled in one suit, as to who was entitled to the money in its hands belonging to Vanderwerker. In the bill said company stated that it was indebted to Vanderwerker in the sum of five thousand, three hundred and thirty-three dollars and twenty-five cents; and in June, 1854, it paid that amount into court, as money to which Vanderwerker was entitled. This amount was not accepted as the true amount of indebtedness of said company to Van-

derwerker, and such proceedings were had in the case that on February 3, 1864, said company was directed to pay the additional sum of four thousand, three hundred and fourteen dollars and thirty-four cents, with interest thereon from June 23, 1854. From the decree requiring the payment of this additional sum into court as the balance due Vanderwerker, the railroad company appealed; and that appeal was passed upon by this Court in March, 1882, and remanded for further proceedings. 19 W. Va., 265. It would serve no good purpose, in considering the questions presented by the assignments of error in the petition for the appeal now under consideration, to give the details of the litigation which has resulted from the various contentions of the parties with reference to this fund.

The case is now for the fourth time in this Court. Upon the present appeal it was argued and submitted, and an opinion (prepared by JUDGE HOLT) handed down affirming the decree complained of. A petition for rehearing was presented by counsel, and granted, and the case reheard. A brief history of the case is given by BRANNON, JUDGE, in the case of *Railroad Co.* v. *Vanderwerker*, decided November 18, 1889, and reported in 33 W. Va., 191, (10 S E. 289).

Counsel for the appellant, in their brief filed upon the rehearing of this cause, claim that this Court, in its opinion, overlooked the fact that there was a commissioner's report filed in the cause, and unexcepted to, which determines all the questions of ownership as to the Cheney and other claims differently from the decree complained of, which decree was affirmed, and claim that for this reason alone the decree complained of should be reversed. The commissioner's report referred to in said brief is the report of W. R. D. Dent, who was appointed by a decree of the circuit court of Taylor county, at its March term, 1885, with directions to ascertain and report whether all or any of the six claims mentioned in Receiver Watson's report were assigned to the complainant, and, if so, when and by whom said assignments were made, and upon what consideration, and whether the complainant, the Baltimore & Ohio Railroad Company, had paid and satisfied any, and, if any, which, of said claims, for which no assignments

were taken, and the amount paid by the complainant on each of said claims, to whom paid, the date of every payment, and whether the claims so paid were taken in full satisfaction of said claims; also whether Dudley S. Nye is the assignee in bankruptcy of the defendant George A. Cheney, and whether Robert Smith is the assignee and transferee of Stephen Benson and Robert Parlin, and what sums, if any, are coming to said Smith and Nye, respectively; also, what sum, if anything, is due and owing to the defendant Vanderwerker on account of the decrees theretofore made and entered in the above cause. In pursuance of the requirements of said decree, said W. R. D. Dent, as commissioner, reported that Dudley S. Nye was the assignee in bankeuptcy of George Cheney; that Robert Smith was the assignee and transferee of Stephen Benson and Robert Parlin; that there was in the hands of James O. Watson, receiver, six thousand one hundred and eighty-four dollars and ninety-nine cents, including interest to November 4, 1885; and that said amount should be disbursed as follows :   Two thousand three hundred and sixty-six dollars and ninety-eight cents to Dudley S. Nye, assignee in bankruptcy of George A. Cheney; two hundred and thirty-one dollars and eighty-five cents to Robert Smith, assignee of Stephen Benson; eight hundred and forty-one dollars and thirty-five cents to same as assignee of Benjamin Parlin; one hundred and forty-seven dollars and eight cents to Moore & Kidwell; six hundred and twenty-one dollars and fifty-eight cents to James Kirby, use of J. D. Parkerson; and three hundred and forty-eight dollars and eight cents to J. D. Parkerson. Said commissioner further reported that the above-mentioned six claims were in fact never paid to James O. Watson, general receiver, by the Baltimore & Ohio Railroad Company, but said company claiming to be the owner of them, gave him a bond of indemnity against any claimant to said claims; that the evidence in the case clearly proved that they were not the owners of the first three above-mentioned claims; and that said company failed to produce any evidence that it was the owner of the other three of said claims. And he recommended that said money be paid to the general receiver, to be properly distributed. This re-

port of Commissioner Dent does not appear to have ever been excepted to. On the contrary, in the decree rendered in the cause on April 7, 1886, it is stated that "the cause came on that day to be heard upon the papers heretofore read. decrees and orders had, and the report of Commissioner W. R. D. Dent, to which report there were no exceptions." After the case of *Railroad Co.* v. *Vanderwerker* was decided, on November 18, 1889, and the cause reversed and remanded for further pleadings, Isaac J. Vanderwerker and Dudley S. Nye, who claimed to be the assignee of Cheney, and Robert Smith, who claimed to be the owner of two debts decreed to Parlin and Benson, filed their petitions, charging that there were several sums of money in the hands of the receiver which had not been paid out, and which ought to have been distributed among them as they were entitled thereto, and claiming that they were the owners of six several claims therein described, that the money had never in fact been paid, and they were entitled to recover the amounts specified in said petitions from the Baltimore & Ohio Railroad Company. To these petitions said railroad company filed its answer, denying that Nye, as such assignee in bankruptcy, was entitled to any part of this fund. Denying that he had any right to it. Alleging that his office had expired, and that he had been discharged. Claiming that these debts, and each of them, had been assigned to it by Cheney and the other persons named, as owners thereof (especially Cheney, Smith, Benson, and Parlin), and that said company was the rightful owner of them; that Cheney having been a bankrupt, and so adjudged, and the assignee having made no claim to this fund, as against the said company, within two years from the time of his appointment, his right to the recovery was barred,—and it relied upon the statute of limitations, and prayed that said company be decreed the rightful owner of these claims. To this answer said petitioners filed a general replication.

It is contended by counsel for said company that, under section 40 of chapter 125 of the Code, there being no affidavit filed denying the facts alleged as such assignment, no proof thereof should be required. The section referred to reads: "Where a declaration or other pleading al-

leges that any person made, endorsed, assigned, or accepted any writing, no proof of the handwriting of such person shall be required unless the fact be denied by an affidavit with the plea which puts it in issue." Now, while it is true that this section would dispense with proof of the handwriting of these alleged assignors, yet it appears that no vouchers were exhibited with said answer, and the writing of said alleged assignors was not before the court. Was the general replication sufficient to put the matters alleged in said answer in issue before the court? The said company in its answer sets forth that certain assignments had been made to it, and its object in so doing is to show that the petitioners are not entitled to the claims assigned to it. This is done as a matter of defense to the petition, and the answer concludes with the allegation that it is the real and *bona fide* owner of each of said claims and debts, and the funds relating to the same in the hands of said receiver, and controverts the alleged rights of petitioners, and insists that it is entitled to have decreed to it the rights to said claims and debts, and to retain said claims against any or all petitioners, and prays the court to protect its interests. This answer, then, does not claim affirmative relief. It merely denies the rights asserted in said petition, alleges that it is entitled to said claims, and prays the court to protect it against the claims asserted in the petition. It asks that the petitioners be denied the claims asserted in their petition, and thus asks for negative, instead of affirmative, relief. I do not, therefore, consider the allegations of this answer such as would call for a special replication. The general replication had the effect of putting in issue the allegations contained in the answer. Now, as before stated, the report of Commissioner Dent does not appear to have been excepted to; but it appears that, subsequent to the filing of said report, depositions were taken in the cause touching the ownership of these six claims, and the court proceeded to determine the matters of account upon the depositions which came into the cause subsequent to the filing of said report by said Dent, without reference to said commissioner's report, and, in opposition to the findings of said commissioner's report, held that said company was the owner of

all of said claims, including the one known as the "Cheney Claim." Was this in accordance with the established rules of equity practice? The question was before the Court in the case of *Ward* v. *Ward*, 21 W. Va., 262, where it was held that: "(1) A commissioner's report made in a cause rightly referred, on the face of which no error appears, will be presumed by the court as admitted to be correct by the parties, not only as far as it settles the principles of the account, but also in regard to the sufficiency of the evidence upon which it is founded, except in so far, and as to such parts thereof, as may be objected to by proper exception taken thereto before the hearing; and the court, at the hearing, is bound to observe this rule of equity practice. And it is error for the court at the hearing to remodel and restate the whole account stated in such report, and enter a decree on its own statement, without reference to the account stated by the commissioner, or the action of the parties in excepting or not excepting thereto. (2) If, in any case, the court is not satisfied with the report of a commissioner in regard to matters not excepted to which might be affected by evidence *aliunde*, instead of remodeling the account on its own estimate of the evidence it should recommit the report, with instructions indicating its opinion, so that the respective parties might have an opportunity of meeting any objection thus suggested." So, also, in the case of *Hyman* v. *Smith*, 10 W. Va., 298, it was held that "a commissioner's report, if erroneous on its face, may be objected to at the hearing of the cause, though no exception be previously filed, and also in the appellate court, though no exception appears to have been taken in the court below; but, without such exception, it cannot be impeached by adult parties on grounds, and in relation to subjects, which may be affected by extraneous testimony." On the same point, see *Ogle* v. *Adams*, 12 W. Va., 215, seventh point of syllabus.

The defendant company also relies upon the statute of limitations. Will such plea protect it? Now when it is remembered that the object and purpose of these various suits were to collect the plaintiff's claims from the defendant Vanderwerker, and the money of said defend-

ant was garnished in the hands of said company; and it thereby became a mere stakeholder of the money, I cannot think that it can be successfully contended that said company can interpose this plea, which is personal to Vanderwerker; and for the same reason the receiver, Watson, could not successfully plead and rely upon the laches of petitioners. And this is so for the further reason that the litigation in regard to these claims has been all the time pending in court, and it appears that much of the delay has been caused by said company. I therefore conclude that the parties owning said claims against Vanderwerker were not barred by the statute of limitations, nor have they been guilty of such laches as would preclude them from recovering the amounts to which they are entitled; and in order that the true amount of said claims may be ascertained, and what parties are entitled thereto, this cause is reversed, and remanded to the circuit court of Taylor county, with directions to refer the cause again to a commissioner, in order that it may be ascertained who are the owners of said claims, and the amounts thereof, and what, if anything, is due from said company to said Isaac J. Vanderwerker, after satisfying said claims to the parties entitled thereto; and the appellees must pay the costs of this appeal.

*Reversed.*