# CHARLESTON.

CLARK, TRUSTEE v. NICKELL *et als.*

Submitted September 6. 1912.    Decided October 28, 1913.

1. BONDS—*Cashier's Bond—Construction—Indemnity—''As.''*

   A bond executed by a bank cashier, reciting his previous election as such, and stating the condition to be that he ''shall well and faithfully apply and account for all monies which may come into his hands as such cashier,'' is, when properly construed, an indemnity to the bank against loss by his default, although its officers are therein named as obligees *as* president and *as* directors of the bank in its corporate name.    (p. 71).

2. PRINCIPAL AND SURETY—*Action on Cashier's Bond—Parties.*

   A suit in equity, by the bank, to enforce the obligation of such bond, should be brought jointly against the surviving, and the personal representatives of the deceased, obligors.    (p. 74).

3. LOST INSTRUMENTS—*Action in Equity—Discovery Pending Suit.*

   If after diligent and unavailing search therefor plaintiff sues, when allowable, in equity, upon a lost bond, its discovery and production thereafter is immaterial upon his right to relief in a suit then pending.    (p. 71).

Appeal from Circuit Court, Monroe County.

Suit by R. L. Clark, trustee, etc., against C. P. Nickell and others.    From decree for defendants, plaintiff appeals.

*Reversed and Remanded.*

*John W. Arbuckle, G. C. Osborne,* and *R. L. Clark,* for appellant.

*T. N. Read* and *John L. Rowan,* for appellees.

LYNCH, JUDGE:

Denied relief upon a bill seeking to charge liability against the obligors on the lost bond of a defaulting bank cashier, plaintiff has appealed to this court. The defendants also cross-assign errors, the principal of which relate to the refusal of the court to sustain their demurrer to the bill.

The bond was executed in 1889 by J. W. McNeer, who had theretofore been elected and was at the time, and for two years prior thereto had been, cashier of the Bank of Union. The obligees were Frank Hereford *as* president and Cary P. Nickell, W. L. Swope, H. T. Houston and J. D. Logan *as* directors of the bank. The obligors were McNeer, the cashier, Nickell, Swope, Logan, A. A. McNeer and H. M. Brown. Thus, as readily appears, three of the parties to the obligation occupied the dual relation of obligors and obligees. The bill names, as defendants against whom recovery is sought, Nickell, Brown, Logan and A. A. McNeer. McNeer, the principal, and Swope died before suit. The bill did not name their personal representatives as parties, or offer any excuse, as insolvency or other cause, for their absence as parties.

Two grounds are assigned in support of the demurrer: want of jurisdiction in equity, and the absence of the personal representatives of Swope and J. W. McNeer.

The bill alleges loss of the bond, and plaintiff's inability to find it after diligent search. This allegation is supported by affidavit. Equity has jurisdiction to enforce payment of a lost obligation. *Lyttle* v. *Cozad,* 21 W. Va. 183; *Hall* v. *Wilkinson,* 35 W. Va. 167; *Yates* v. *Stuart,* 39 W. Va. 124. By their answers, the defendants deny loss of the bond. They copy it into their answers, and aver its cancellation by an order of the board of directors and delivery to C. P. Nickell. But they do not produce the original. Of course, in passing upon a demurrer, the court ordinarily confines its examination to the pleading whose sufficiency is thus challenged. But these answers

reflect light to some extent upon the question of jurisdiction. They tend to establish the necessity for resort to a forum whose rules and mode of procedure allow greater liberality than is permissible in actions at law. In an action to recover the penalty of a bond, the pleading must ordinarily make profert. If the bond is lost, its production is not possible. Of course, the pleader may, even then, declare on it as a lost or destroyed instrument; or he may demand its production by his adversary, if in his possession, as it perhaps is in the case now under consideration. But the procedure in equity is more flexible and affords greater freedom. Consequently, resort to it is frequently, though not always, permitted to establish and enforce payment of a lost instrument. As stated, the defendants do not produce the original bond. But even the subsequent production of a lost obligation will not operate to defeat jurisdiction, when once properly assumed. *Lyttle* v. *Cozad*, 21 W. Va. 183.

But still other important reasons besides loss support plaintiff's right to resort to equity to establish the bond and enforce its payment. The existence of the bond, it may be said, is sufficiently established. But from the copy it appears (1) that the obligation is not directly payable to the bank, but is payable to its officers *as* president and *as* directors, three of whom are also obligors; and (2) that, as appears from the answers, the three obligors who are also obligees assert cancellation of the bond and delivery thereof after cancellation to the defendant Nickell. These grounds make resort to equity the only sufficient and appropriate source of relief.

Although the bond does not expressly name the bank as obligee, yet, having evidently been executed to secure it against the cashier's default, a court of equity will construe it according to its real intent and purpose. The bond describes the obligees as president and directors of the bank, and is therefore apparently for its and not their protection. A bond was executed to Yeates and others, then overseers of the poor of Franklin County, Pennsylvania, who by statute were a corporation, and not to the corporation by name. The court held that the bond enured to the benefit of the corporation. *Greenfield* v. *Yeates*, 2 Rawle 158. In that case, the successors of Yeates and others, as overseers,

recovered judgment in an action at law on the bond. Besides, as seems reasonably obvious from its language, and from the construction given to it by *Ross* v. *Milne,* 12 Leigh 204, 37 Am. Dec. 646, *Clarkson* v. *Doddridge,* 14 Grat. 42, *Jones* v. *Thomas,* 21 Grat. 96, *Johnson* v. *McClung,* 26 W. Va. 659, and *Railway Co.* v. *Wilson,* 52 W. Va. 652, § 2, Ch. 71, Code, contemplates a remedy to the bank by suit or action upon the bond now under consideration. As paraphrased in *Johnson* v. *McClung,* cited, it provides that "if a covenant or promise be made for the sole benefit of a person with whom it is not made such person may maintain in his own name any action thereon which he might maintain in case it had been made with him only and the consideration had moved from him to the party making such covenant or promise". The consideration for the bond in this case moved directly from the corporation. McNeer was elected its cashier, not the cashier of its board of directors, the officiary acting for it and not for themselves. The act of the board in the election of a cashier is an election by the bank. When elected, the cashier was an officer of the bank, and, by the bond, the board sought the bank's protection against the default of the cashier. Hence, the conclusion that the bond, on its face, indicates an intent to indemnify the bank against loss occasioned by the dereliction of McNeer, its cashier. This conclusion is re-enforced by the language of the obligation itself. The obligees are Hereford as president and Nickell and others as directors of the Bank of Union. *"As president"* and *"as directors"* are not words of mere description or identification of the person. The word *"as"* designates the official relation of the obligees to the real beneficiary, the bank. The word is so defined in *Hayes v. Crane,* 48 Minn. 39. There Crane, acting as assignee under an assignment for the benefit of creditors, without authority of the court, under proceedings to foreclose a mortgage, entered into an agreement for the purchase, or redemption from enforced sale under a decree of court, of the property assigned. Having refused to comply therewith, the plaintiff sought by this suit to enforce specific performance. The court held that his agreement *as* assignee was, in effect, an agreement in his character as trustee and not in his own right, and therefore

refused to grant the relief sought. The obligation, by its condition providing that "if J. W. McNeer shall well and faithfully apply and account for all monies which may come into his hands as such cashier, then and in that case his bond is to be null and void, otherwise to remain in full force and effect", further strengthens this construction. Whose money was to be protected from defalcation? Plainly, not the money of the president and directors *eo nomine*: their money, of course, when by deposits it is commingled with that of other depositors and placed in the custody of the bank, then becoming, for all proper purposes, its money, subject to its control and disposition in the due administration of its legitimate business, by its proper officer, the cashier. He was its custodian for the bank; and the bond was required to secure its wrongful appropriation directly by him, or indirectly by others through his disloyalty to the trust reposed in him. The president and the directors were the mere agents of the bank, its managing officers. What they did in their official capacity, they did for the bank. In taking McNeer's bond, they acted for the bank, not for themselves. Many authorities so hold, under like circumstances. "Where one subscribed for a certain share in a turnpike, and promised to pay on demand to the agent of the corporation all assessments levied thereon, it was held that the corporation could bring assumpsit to recover the amount of such assessments". *Taunton Turnpike* v. *Whiting,* 10 Mass. 327, 6 Am. Dec. 124; *Worcester Turnpike* v. *Willard,* 5 Mass. 80, 4 Am. Dec. 39; *Essex Turnpike* v. *Collins,* 8 Mass. 292. "An action upon a note payable to the cashier of the Commercial Bank may be maintained by the bank as promisee, it appearing that the consideration proceeded from the bank." *Bank* v. *French,* 21 Pick. 486, 32 Am. Dec. 280, and cases cited in note; *Gilmore* v. *Pope,* 5 Mass. 491.

In order to maintain an action or suit as a beneficial obligee, it seems necessary to allege and prove plaintiff's interest in the performance of the duty the failure of which gives rise to the remedy. When the plaintiff sues as beneficial obligee on a bond of indemnity, by reason of damage resulting from a breach of its condition, he should allege and prove that he had an interest in the performance of the duty, and that the duty was imposed

either for his sole benefit or jointly for the benefit of himself and others. *Teal* v. *Fulton*, 1 N. Y. 537, 49 Am. Dec. 352, 12 How. (U. S.) 284; *Ware* v. *Brown*, 2 Bond (U. S.) 267; *State* v. *Harris*, 89 Ind. 363, 46 Am. Rep. 169; *Harrington* v. *Ward*, 9 Mass. 251; *Raysford* v. *Phelps*, 43 Mich, 342, 38 Am. Rep. 189; *Wood* v. *Ruland*, 10 Mo. 143; *Rome Bank* v. *Mott*, 17 Md. 554; *Houreman* v. *Girard*, 81 Pa. 256. In *Brown* v. *Lester*, 13 Smed. & M. (Miss.) 392, the appellate court held the clerk of a court liable on his official bond, for his failure to place on the trial docket in its proper order, as required by statute, a case the trial of which was thereby deferred until after the defendant became insolvent, thus resulting in loss of plaintiff's debt.

We have no doubt of the propriety and justness of our conclusion that the bank in its corporate capacity may sue on the bond. But, in our opinion, all the surviving obligors, and the representatives of those who are dead, should be named as parties to the suit, unless their absence may be excused by reason of insolvency or other substantial cause, none being averred as the case now stands. Such joinder in equity we find sustained by reason and by competent authority. In a suit by the holder of a note to subject the estate of a deceased endorser to satisfy it, the representatives of the deceased maker and of another endorser should be made parties. *Duerson* v. *Alsop*, 27 Grat. 230. Again in *White* v. *Kennedy*, 23 W. Va. 221, it is held that "in a creditor's bill against the administrator and heirs of a decedent to enforce the collection of a debt secured to the plaintiff by the joint and several obligation of the decedent and another obligor, such obligor is a necessary party to such bill, although he may be a non-resident", because he "has a right to appear and make defense to such bill, and the administrator and heirs of such decedent have the right to require him to be made a party to the suit, so that in case he should appear his libility for such debt may be ascertained and determined as between him and such decedent". In *Mayor* v. *Murray*, 44 Eng. Rep. (Reprint) 194, a suit in equity by one of three sureties on a treasurer's bond, some of whom had died, the purpose of which was to charge a fund received by one surety from the treasurer for his indemnity, it was held that "for the purposes of the suit a rep-

resentative of the deceased surety was a' necessary party." The chancellor said: "I shall not dispose of the case without having a personal representative of Renton before the court; and, though it is not the plaintiff's fault that there is not one, yet, as it is his business to procure one, he must do so". See also *Findley* v. *Smith,* 42 W. Va. 300; *Jaluka* v. *Matejek,* 55 S. W. 395; *Roane* v. *Pickett,* 2 Eng. (Ark.) 510; *Loops* v. *Summers,* 3 Rand. 511; *Foster* v. *Crenshaw,* 3 Munf. 515; *Tidball* v. *Bank,* 98 Va. 768; *Ice & Dairy Co.* v. *Frick Co.,* 96 Va. 141. In cases of this character, it is necessary to name as parties all persons living, and the personal representatives of those who are dead, whose interests are to be affected by the final determination of the cause, to the end that all matters may be adjusted and complete justice done in one suit. Otherwise, if liability is fixed as to one or more and not all of the several obligors, those required to discharge and who do discharge the liability are obliged to seek by other litigation contribution from those jointly liable with them. And the fact that some are dead, does not in equity, excuse failure to join the personal representatives with those still living, although at law such joinder is not allowable. Where a creditor applies to a court of equity for its aid in the collection of his debt against sureties, the simple allegation of the death of the principal debtor or a co-surety and his insolvency will not excuse the omission to make his representative a party to the bill, unless it appears that no part of the debt could be made out of his estate. *Roane* v. *Pickett, supra.* The principal if living, and his estate thereafter, by the very nature of the undertaking, assumes the chief burden of payment. While a judgment obtained in an action at law against all the obligors when sued jointly, as they may be, is enforceable against any one of them, it enures to the benefit of the one so discharging the obligation, who may enforce it by any proper process or preceeding against the principal or his estate, or ratably against the co-sureties. If at the date of the action or during its pendency the principal or any surety dies, separate actions against the survivors and the personal representatives of the deceased obligors may proceed to final judgment in both. But in equity, by reason of its flexible rules and

procedure, all may with propriety be joined in the same suit, and should be joined, unless completely insolvent at the time; and, to excuse the omission even for this cause, there must be averment and proof of insolvency, unless admitted by defendants.

The circuit court should, therefore, have sustained the demurrer, on the ground of want of necessary parties. All persons interested in the subject matter of the litigation, where rights may be affected by the final decree, should be before the court, to the end that complete justice may be done and the litigation may be final and conclusive.

Deeming this defect as to parties material, nothing need be said touching the merits of the case as presented to the court for final decree. The case, as presented on final hearing, was not perhaps, in some respects, fully sustained by proof. But the court's finding does not preclude plaintiff from an effort to charge the estates of other obligors on the bond.

We therefore reverse the decree of November 10, 1910, sustain the demurrer, and remand the cause.

*Reversed and Remanded.*