300 A.2d 642.

Darleen T. Johnson *vs.* Milton G. Johnson.

Howard Martin Johnson, Incorporated *et al. vs.*
Milton G. Johnson.

FEBRUARY 23, 1973.

Present: Roberts. C. J., Paolino, Powers. Joslin and Kelleher, JJ.

Roberts, C. J.   The matter, before us is an appeal from
the denial by a justice of the Superior Court of a motion
to charge the garnishees.   The appellant is Darleen T.
Johnson, the plaintiff in Darleen T. Johnson v. Milton G.

Johnson, C. A. No. 70-1163, hereinafter referred to as Darleen's claim. Also involved is the case of Howard Martin Johnson, Incorporated, and Howard M. Johnson v. Milton G. Johnson, C. A. No. 70-2590, hereinafter referred to as Howard's claim.

Milton G. Johnson, defendant in the cases referred to above, was himself plaintiff in an action pending in the Superior Court for Kent County, that is, C. A. No. 67-251, entitled Milton G. Johnson v. Leonard T. Maynard, Jr. et al., which will hereinafter be referred to as Milton's claim. This latter action had been brought by Milton in an effort to recover from the defendants, hereinafter collectively referred to as the garnishees, moneys which he claimed were due him for legal services already rendered. As of March 5, 1970, Milton's claim had been referred by a Superior Court justice to special masters for a determination specifically of what amount was due Milton as legal fees.

The motion which is the subject matter of this appeal was heard by the Superior Court on March 11, 1971, and on April 30, 1971, the trial justice rendered a decision, wherein he said: "Therefore in the case of Darleen, which is 70-1163, the motion to charge the garnishees is denied and in the Howard case, which is 70-2590, the garnishees are charged to the full extent of the fixed sum, to wit, $10,-625.57." The record does not disclose that any motion to charge the garnishees was made in the Howard claim, and it is from the judgment entered in denying her motion to charge the garnishees in Darleen's claim, and, instead, charging the garnishees in Howard's claim that Darleen is pressing her appeal to this court.

While Milton's claim was under consideration by the masters, Darleen on April 23, 1970, caused the garnishees to be served with writs of attachment. The affidavits of the garnishees in response to the writs stated, in part, that at the time of the service of the writs they possessed none

of Milton's personal estate except what amount might be proved due him on the basis of his claim for legal fees.

On September 14, 1970, the masters having filed their report, judgment was entered in the Superior Court, County of Kent, for Milton in Milton's claim in the sum of $10,625.57 plus interest and costs. On that same day Darleen again caused writs of subsequent attachment to be served on the garnishees. The sheriff's returns stated that the service of the writs of subsequent attachment was made on the garnishees at 4:48, 4:49, and 4:50 p.m., respectively, on September 14, 1970. On that same day Howard had caused writs of attachment to be served on the garnishees in Howard's claim. The sheriff's return on those writs stated that service was made on the garnishees at 4:45, 4:46, and 4:47 p.m., respectively, on September 14, 1970. The affidavits filed by the garnishees in response to the writs of attachment of both Darleen and Howard were similar to the affidavits filed by them in response to the writs of attachment of Darleen on April 23, 1970.

Approximately one week later, on September 22, 1970, in the matter of Milton's claim, a supersedeas judgment was entered for Milton for $10,625.57 plus interest from the date of entry and costs. Thereafter, on September 23, 1970, writs of subsequent attachment were caused to be served on the garnishees by Howard in Howard's claim, and in response thereto the garnishees filed affidavits similar in form and content to those previously filed in that action.

Thereafter, on February 25, 1971, the Superior Court entered summary judgment for appellant in Darleen's claim in the amount of $20,959.30 with interest and costs. On the following day appellant moved to charge the garnishees in Darleen's claim. Subsequently, on April 2, 1971, judgment was entered in Howard's claim for the plaintiffs therein. On March 11, 1971, the motion of appellant to charge the garnishees in Darleen's claim was argued before the Su-

perior Court. On April 30, 1971, the trial justice denied the appellant's motion to charge the garnishees in Darleen's claim and, instead, charged the garnishees in Howard's claim in the amount of $10,625.57. In his decision the trial justice expressly found that the only effective attachments were the subsequent attachments in Howard's claim made on September 23, 1970, the day after the supersedeas judgment in Milton's claim was entered.

The question is whether Darleen's attachments of April 23, 1970, constituted a valid garnishment of Milton's claim. If it were, it would be dispositive, as it would be error to have denied her motion to charge the garnishees. Under the controlling statute, the garnishment that is first in time has priority. General Laws 1956 (1969 Reenactment) §9-26-30. The trial justice gave no reason whatsoever in support of his conclusion that Darleen's garnishment on April 23, 1970, was invalid. It may be that he relied on the general rule that an unliquidated claim is not subject to garnishment. The appellant relies principally on *McKendall* v. *Patullo*, 52 R. I. 258, 160 A. 202 (1932), as providing an exception to the general rule stated above.

In *McKendall*, the defendant, a builder, contracted with the garnishee to build two houses. By April of 1927, the garnishee took possession of the houses, but final payment had not been made. On September 8, 1927, McKendall, a materialman of the defendant, commenced his action by writ of attachment on the money owed on the contract. On November 3, another materialman, Burrows & Kenyon, Inc., also commenced suit with garnishment process. The garnishee's affidavit in both actions set forth the contract and certain claims against the defendant for recoupment for defective work and delay. She also requested to be made a party so that the court could determine what, if anything, she owed the defendant. The Superior Court found that the garnishee owed the defendant $2,416.35. Thereafter,

Burrows & Kenyon, Inc., again served the garnishee. Both materialmen then sought to charge the garnishee. This court ruled McKendall's garnishment first in time and valid. After first stating the general rule that unliquidated claims are not subject to garnishment, the court proceeded to outline its reasons for drawing an exception to that rule: "The purpose of the garnishment statute is to render liable for the payment of debts, property that cannot be reached by the direct process of attachment. We see no valid reason why this purpose should be defeated because the amount due the principal defendant is made uncertain by a claim to a part of the fund by the garnishee. While she cannot be immediately charged, the security for the debt is maintained as contemplated by the statute until by appropriate proceedings the amount for which she is chargeable has been determined." *Id.* at 263, 160 A. at 204.

The court's opinion appears to be based on the fact that there was an admitted obligation owing from the garnishee to the contractor. The garnishee had taken possession of the houses and was only contesting the amount due the contractor. The high likelihood that it would be determined that the garnishee would be liable to pay something to the defendants supported the validity of the garnishment even though the exact amount was indeterminate.

A number of other cases have allowed garnishment or attachment of an unliquidated claim.[1] The same general

---

[1]Some of these are: *Meacham* v. *Meacham,* 262 Cal.App.2d 248, 68 Cal.Rptr. 746 (Ct. of App. 1968) (Rights under a royalty contract were subject to garnishment.) ; *Brunskill* v. *Stutman,* 186 Cal.App.2d 97, 8 Cal.Rptr. 910 (Ct. of App. 1960) (Citing *McKendall* v. *Patullo,* 52 R.I. 258, 160 A. 202 (1932), the court allowed garnishment of retainage on a contract to repair a naval vessel.) ; *Van Orden* v. *Anderson,* 122 Cal.App. 132, 9 P.2d 572 (Ct. of App. 1932) (Garnishment was permitted of the amount due the beneficiary of a trust where the purposes of the trust had been accomplished even though the amount due had not yet been determined.) ; *Parker, Peebles & Knox* v. *El Saieh,* 107 Conn. 545, 141 A. 884 (1928) ; *Finch* v. *Great American Ins. Co.,* 101 Conn. 332, 125 A. 628

reasoning runs throughout these cases. Garnishment is allowed on an unliquidated claim where there is a certainty as to liability but a contingency as to amount. Where an obligation to pay exists, even though the amount of that obligation is undetermined, garnishment will lie where the amount is capable of definite ascertainment by the contract, or by the facts then known, or by testimony to be taken. The logic of the cases which permit garnishment where an obligation to pay pursuant to a contract exists even though the amount due is uncertain is that the garnishee holds something of the personal estate of the defendant-debtor.

In opposition to this line of argument, appellee has cited a number of cases supporting the proposition that unliqui-

(1924); *Knox* v. *Protection Ins. Co.,* 9 Conn. 430 (1833) (These three Connecticut cases allowed garnishment of unadjusted insurance claims.); *Ransom* v. *Bidwell,* 89 Conn. 137, 93 A. 134 (1915) (Final payment under a construction contract became subject to garnishment when the contract was substantially complete even though the amount owed was to be determined by arbitration. This case was relied on and discussed at length by this court in *McKendall* v. *Patullo, supra.*); *Hussey* v. *Titcomb,* 127 Me. 423, 144 A. 218 (1929); *Cutter* v. *Perkins,* 47 Me. 557 (1859) (Both Maine cases permitted attachment of what an executor held for the residuary legatee of a will even though it might ultimately be proven that nothing was due the legatee.); *Grise* v. *White,* 351 Mass. 427, 221 N.E.2d 874 (1966) (Court allowed garnishment of the amount owed an insurance company on a judgment even though the insurance company had a right of set-off against that judgment.); *Talbert* v. *Solventol Chemical Products, Inc.,* 304 Mich. 557, 8 N.W.2d 637 (1943) (Garnishment of commission due under a contract was allowed.); *John W. Mc-Grath Corp.* v. *Vera Cruz Cia. Naviera, S.A.,* 256 So.2d 505 (Miss. 1971) (Judgment on the issue of liability in favor of a debtor against the garnishee became subject to garnishment prior to any determination of damages.); *American National Ins. Co.* v. *United States Fidelity & Guaranty Co.,* 215 So.2d 245 (Miss. 1968) (The proceeds of an employee's fidelity bond were subject to garnishment even though the amount due had not yet been determined.); *Petri* v. *Sheriff,* 87 Nev. 549, 491 P.2d 43 (1971) (A certificate of deposit voluntarily placed with the county clerk by a debtor being sued was subject to garnishment.).

dated damages provide an insufficient basis for attachment. However, most of his cases are of a different posture than this one. In those cases the suit was instituted by writs of attachment; the plaintiffs' claims were for unliquidated amounts; and the courts held the attachments improper. Attachment is a drastic remedy which ties up an asset of a defendant by taking property prior to judgment. In the cited cases, the principal claim was unliquidated, but a fixed asset was attached. In the present case, it was merely the claim garnished which was unliquidated. No hardship was imposed on Milton by the garnishment, for he was not deprived of the use of any asset, inasmuch as he had no right to any money until judgment. Thus, appellee's authorities are not applicable to the circumstances of this case.

We must now turn to the claim Milton G. Johnson had against Leonard T. Maynard, Jr. et al.[2] The defendants had employed Johnson to resolve a problem arising under the will of Henry Warner Budlong. Budlong devised to the mother of Hope Maynard and Alice I. Hohler a life estate in 25 acres of land in Warwick and the remainder to the State of Rhode Island for a public park. The establishment of a public park on the property would have dislodged the people living there and deprived the defendants of income-producing property. Johnson proposed a plan which was adopted by the state, by which the state disclaimed the gift under Budlong's will and the defendants made an alternative gift of 25 acres to the state. From the pretrial memoranda, it is agreed that Milton G. Johnson performed legal services for the defendants, and that

---

[2]The following facts about Milton's claim were obtained from the record in Kent County, C. A. No. 67-251 (Milton G. Johnson v. Leonard T. Maynard, Jr.; Hope Maynard; and Alice I. Hohler). This record was transferred from the office of the Clerk of the Kent County Superior Court upon the informal request of this court.

they accepted the plan he proposed and participated in the ultimate solution. In dispute, however, was the amount those services were worth. No written contract between Milton and the defendants was made. Milton had received $7,500. In his bill of particulars, Milton claimed about $4,000 out-of-pocket expenses and a total fee of $42,000. Deducting the $7,500 he had already received, he sought approximately $38,500. The defendants disputed the values Milton put on the land, but in their pretrial memo they indicated that after they had paid the $7,500, they felt that the balance due would be approximately $2,500. The trial justice then appointed special masters to determine what amount, if any, was due Milton.

We must determine whether Milton's claim fits the *Mc-Kendall* exception to the general rule that an unliquidated claim cannot be garnished. Milton's claim is similar to *McKendall* in that it is undisputed that he rendered services to the defendants, and that the defendants accepted the fruits of those services. It is dissimilar in that Milton's services were not rendered pursuant to any written contract. Moreover, in *McKendall*, the garnishee was making a claim for recoupment and delay; thus, in reality, she was only making a claim to a part of the fund which she owed the defendant under the contract. Here, at issue was what was the value of the services performed by Milton, for there was no contract price. It might be argued that this difference is sufficient to distinguish the cases. However, we feel the difference is simply a product of the different services provided. When one hires a contractor to build a house, a price is normally established prior to commencement of construction. When one hires a lawyer to represent him in a certain matter, a fee may not be set prior to beginning work if the extent of the work to be done is not known at that time.

The crucial issue in *McKendall* was whether it was "* * *

reasonably certain that she [the garnishee] had in her hands personal estate belonging to the defendant." *McKendall* v. *Patullo, supra* at 263, 160 A. at 204. Applying that test to the factual context at the time of garnishment, we must conclude that it was sufficiently certain that something was owing Milton and thus his claim was subject to garnishment. The court had appointed masters; the defendants had conceded that Milton performed certain services for them; and they indicated in their memo that they had felt those services were worth $10,000. Since they had only paid Milton $7,500, it was likely that the masters would find that at least $2,500 would be due him. Since the obligation to pay existed, and only the amount was uncertain, Milton's claim seemed analogous to that in *McKendall*. Hence, Darleen's garnishment was valid, and it was improper for the trial justice to deny her motion to charge the garnishees.

Neither party to this appeal has raised the relevance of the United States Supreme Court's opinion in *Sniadach* v. *Family Finance Corp.,* 395 U. S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969). Milton had notice of Darleen's motion to charge the garnishees, and he made an appearance at the hearing on the motion. However, he is not a party to this appeal. Therefore, we have not considered the constitutional validity of this prejudgment garnishment on the grounds recognized in *Sniadach.*

The appeal of the appellant, Darleen, is sustained, the judgment appealed from is reversed, and the cause is remanded to the Superior Court for further proceedings.

Mr. Justice Powers participated in the decision but retired before its publication. Mr. Justice Doris did not participate.

*Higgins, Cavanagh & Cooney, Albert D. Saunders, Jr.,* for appellant.

*Aram A. Arabian,* for appellees.