336 S.E.2d 552

The COMMERCIAL BANK
OF BLUEFIELD

v.

ST. PAUL FIRE AND MARINE
INSURANCE CO.

No. CC945.

Supreme Court of Appeals,
West Virginia.

Nov. 1, 1985.

---

Harold D. Brewster, Jr., Hudgins, Coulling, Brewster, Morhous & Cameron, Bluefield, for appellant.

J.W. Barringer, R. Thomas Czarnik, Kwass, Stone, McGhee & Feuchtenberger, Bluefield, for appellee.

McHUGH, Justice:

This case is before this Court upon certified questions from the Circuit Court of Mercer County, West Virginia. It presents some questions of first impression in this jurisdiction regarding the liability of an employee fidelity insurer to a third party.

Data Services Corporation [hereinafter, "the insured"] performed payroll services for the Commercial Bank of Bluefield [hereinafter, "the bank"]. An employee of the insured, through a check kiting scheme, misappropriated the insured's checking account funds in two banks, including the bank herein. The misappropriation of funds (in the aggregate, in excess of $600,000.00) resulted in the insured's few remaining assets being attached by secured creditors and in the insured's complete cessation of business. The misappropriation also resulted in the loss, under interbank collection laws, of approximately $185,000.00 by the bank.

Within two weeks after the check kiting scheme was discovered, the bank brought an action and subsequently obtained a default judgment against the insured for the damage sustained by the bank resulting from the defalcation by the insured's employee. A writ of execution was returned unsatisfied.

After obtaining the default judgment the bank brought this proceeding against St. Paul Fire and Marine Insurance Company [hereinafter, "the insurer"], which had indemnified the insured against loss, up to $50,000.00, from employee infidelity (dishonesty or fraud). The original complaint, filed within several days after discovery of the insurance, was predicated upon a third-party-beneficiary-contract theory of recovery. The amended complaint added a garnishment-in-aid-of-execution theory of recovery. The parties engaged in pre-trial discovery.

Thereafter, the trial court, the Circuit Court of Mercer County, West Virginia, denied both the bank's motion for summary judgment and the insurer's motion to dismiss. To obtain pre-trial guidance on the rather novel theories of recovery and defenses, the trial court certified the following three questions (paraphrased by us)[1]:

(1) May a judgment creditor (here, the bank) maintain a garnishment proceeding in aid of execution to reach the proceeds of a judgment debtor's (the insured's) employee fidelity insurance policy when the judgment debtor (the insured) has sustained a loss within the meaning of that policy?

(2) May the bank as a judgment creditor of an indemnitee (the insured) maintain, as a third-party beneficiary, a direct action against an indemnitor (the insurer) when the indemnity is against loss by the indemnitee?

(3) May an indemnitor (the insurer) in either a garnishment-in-aid-of-execution

proceeding or a third-party-beneficiary proceeding assert defenses against the judgment creditor (here, the bank) which the indemnitee/judgment debtor (the insured) failed to assert (primarily because the latter was defunct at the time of the underlying action)?

The trial court answered each of these questions in the affirmative. We agree that the first question should be answered affirmatively but conclude that the other two questions should be answered in the negative.

## I. *Garnishment*

The employee fidelity insurance policy in this case indemnified the insured against loss due to employee dishonesty, not against liability to third parties. Coverage for the latter was expressly excluded (by the "legal fees exclusion"). In this case the insurer's liability to the insured accrued under the terms of the policy when (1) the employee of the insured committed a covered dishonest or fraudulent act to obtain a financial benefit and (2) the insured thereby sustained a loss of money, securities or other property. The action by the bank against the insured resulting in a default judgment against the latter established the first condition, the dishonest or fraudulent act.[2] The bank asserts in this case against the insurer that the second condition, the fact and the amount of the loss by the insured, will be established by evidence, thereby mooting the insured's lack of filing of a notice and proof of loss with the insurer as required by the policy. In addition, the fact of the insured's loss appears to be uncontroverted. Instead, the insurer defends essentially upon the basis that the amount of the loss has not been ascertained by the filing of a proof of loss, a condition precedent to recovery.

■ *W.Va.Code*, 38–5–10 [1931][3] provides for garnishment in aid of execution,

1. The questions were certified pursuant to *W.Va.Code,* 58–5–2 [1967] and *W.Va.R.App.P.* 13.

2. The employee of the insured who was involved in the check kiting scheme pled guilty to the violation of federal banking laws. The mis-

appropriated funds have never been recovered by the insured.

3. *W. Va. Code,* 38–5–10 [1931] provides:
   Upon a suggestion by the judgment creditor that some person is indebted or liable to the judgment debtor or has in his possession or

also called a suggestion proceeding. "Garnishment is an ancillary statutory proceeding which has long been resorted to in aid of the collection of judgments. Its purpose is to divert to the judgment creditor a payment due the judgment debtor by a third person." *Emmons-Hawkins Hardware Co. v. Sizemore*, 106 W.Va. 259, 260, 145 S.E. 438, 439 (1928). If it appears from the answer of the garnishee that he is indebted or liable to the judgment debtor, or has personal property belonging to the judgment debtor, the court will order him to pay the debt or deliver the property to a receiver for distribution to the judgment creditor. *W.Va.Code*, 38–5–15 and –19 [1931]. If the garnishee fails to answer, or if the judgment creditor alleges that the garnishee has failed to disclose fully his debts due to the judgment debtor, the court or jury impanelled will "hear proof," "inquire" and make a determination as to the "questions at issue," that is, as to the existence and the amount of any debts due to the judgment debtor by the garnishee. *W.Va.Code*, 38–5–17 and –18 [1931]. *See* syl. pt. 9, *Lutz v. Williams*, 79 W.Va. 609, 91 S.E. 460 (1917); syl. pt. 2, *Lanham v. Lanham*, 30 W.Va. 222, 4 S.E. 273 (1887).

The word 'garnishment' is derived from the Norman French word 'garnir,' meaning to warn. [citation omitted] Thus, a summons of garnishment under our statutes is a warning to the garnishee not to pay the money or deliver the property of the judgment debtor in his hands, upon penalty that if he does he may subject himself to personal judgment.

*Lynch v. Johnson*, 196 Va. 516, 520, 84 S.E.2d 419, 421 (1954). "Garnishment [in aid of execution on a judgment] is, in effect, a suit by the [judgment debtor], in the name of the [judgment creditor], against the garnishee, and he [the judgment creditor] generally occupies toward the garnishee the same position that his debtor occupied; his rights are no higher." *Crane v. Standard Lumber & Mfg. Co.*, 77 W.Va. 617, 620, 87 S.E. 1018, 1019–20 (1916). Thus, a judgment creditor in a garnishment proceeding is subrogated to the rights of the judgment debtor against the garnishee.

We now consider whether the proceeds of an employee fidelity insurance policy may be subject to garnishment.

Employee fidelity insurance (sometimes called fidelity guaranty insurance) is a contract whereby one for consideration agrees to indemnify the insured against loss arising from want of integrity, fidelity or honesty of employees or other persons holding positions of trust. The insurer is liable to the insured only in the event of a loss sustained by the insured. *See* 13 M. Rhodes, *Couch Cyclopedia of Insurance Law 2d* §§ 46:2, 46:219 (rev. 1982); 9A J. Appleman and J. Appleman, *Insurance Law And Practice* § 5661 (rev. 1981). Employee fidelity insurance "is direct [indemnity-against-loss] insurance procured by [the insured] in favor of himself, as contrasted with bonds running to the benefit of members of the public harmed by the misconduct of the covered individual, which bonds are third-party beneficiary contracts." *Ronnau v. Caravan International Corp.*, 205 Kan. 154, 159, 468 P.2d 118, 122 (1970). *See also* 13 M. Rhodes, *Couch Cyclopedia of Insurance Law 2d* § 46:1 at 10 (rev. 1982). That the insured may be liable to a third party for a loss of

under his control personal property belonging to the judgment debtor, which debt or liability could be enforced, when due, or which property could be recovered, when it became returnable, by the judgment debtor in a law court, and which debt or liability or property is subject to the judgment creditor's writ of fieri facias, a summons against such person may be sued out of the office of the clerk of the circuit court of the county in which such person so indebted or liable, or so having such personal property, resides, or, if he be a nonresident of the State, in the county in which he may be found, upon an attested copy of such writ of fieri facias being filed with such clerk to be preserved by him in his office, requiring such person to answer such suggestion in writing and under oath. The return day of such summons shall be the next term of such court.

For comparable provisions concerning pre-judgment garnishment see *W. Va. Code,* 38–7–15, –24 to –29 [1931]. Many of the cases do not clearly distinguish between pre- and post-judgment garnishment, and for many purposes the principles are the same.

money resulting from employee dishonesty does not transform a policy covering the insured against a direct loss into one indemnifying against liability. *175 East 74th Corp. v. Hartford Accident & Indemnity Co.*, 51 N.Y.2d 585, 593, 435 N.Y.S.2d 584, 588, 416 N.E.2d 584, 587 (1980).

■ A "loss" occurs generally under an employee fidelity insurance policy when money or other covered property is misappropriated from the insured through employee dishonesty or fraud. *See American National Insurance Co. v. United States Fidelity & Guaranty Co.*, 215 So.2d 245, 249 (Miss.1968); *Alberts v. American Casualty Co.*, 88 Cal.App.2d 891, 898–99, 200 P.2d 37, 41 (1948). "Loss" under such a policy does not require misappropriation plus a requirement that the insured pay the damages also sustained by a third party as a result of the misappropriation. *American National, supra*, 215 So.2d at 249. On the other hand, in a situation not involving a misappropriation of the insured's property but damage sustained by a third party as a result of the fraudulent misrepresentations of the insured's employee, it is clear that the third party's obtaining a judgment against the insured does not result in a "loss" under the employee fidelity insurance policy. *See Ronnau v. Caravan International Corp.*, 205 Kan. 154, 161, 468 P.2d 118, 123–24 (1970); 38 C.J.S. *Garnishment* § 110.d. at 319 (1943).

■ Once a loss is sustained by the indemnitee under an employee fidelity insurance policy as the result of employee dishonesty or fraud in the form of misappropriation of the indemnitee's money or property, the indemnitor is indebted to the indemnitee, and a judgment creditor of the indemnitee may subject to garnishment the debt of the indemnitor to the indemnitee. *See American National Insurance Co. v. United States Fidelity & Guaranty Co.*, 215 So.2d 245, 248–49 (Miss.1968); 18 M.

Rhodes, *Couch Cyclopedia of Insurance Law 2d* § 74:100 (rev. 1983).

■ In the case now before us the bank is not relying upon its judgment against the insured to establish a "loss." The misappropriation of the insured's checking account funds by its employee unquestionably resulted in a "loss."

The next two questions concerning the right to garnishment of the employee fidelity insurance proceeds are whether the facts that (1) the insured did not submit to the insurer/garnishee a formal notice and proof of loss as required by the policy and that, consequently, (2) the amount of the loss has not been ascertained are sufficient to defeat the bank's right to subject the insurance proceeds to garnishment. We conclude that neither of these omissions bars garnishment.

The failure of an insured/judgment debtor to furnish proof of loss does not preclude garnishment of the insurance proceeds, according to the weight of, and, in our opinion, the better reasoned, authorities, since the judgment creditor as subrogee to the insured's rights may make such proof if the insured fails to do so, and since the insurer normally cannot show prejudice to its investigative rights. *See American National Insurance Co. v. United States Fidelity & Guaranty Co.*, 215 So.2d 245, 250 (Miss.1968); *Second New Haven Bank v. Kobrite, Inc.*, 86 Ill.App.3d 832, 835, 41 Ill.Dec. 947, 949, 408 N.E.2d 369, 371 (1980); 18 M. Rhodes, *Couch Cyclopedia of Insurance Law 2d* § 74:87 (rev. 1983); 45 C.J.S. *Insurance* § 982(2).a. (1946); 6 Am.Jur.2d *Attachment And Garnishment* § 167 (1963). *Cf. Republic Mutual Insurance Co. v. State Farm Mutual Automobile Insurance Co.*, 413 F.Supp. 649, 653 (S.D.W.Va.1976) (the identity of the person giving notice of the claim to the insurer is immaterial, if in fact notice is given).[4]

---

4. In *Willey v. Travelers Indemnity Co.*, 156 W. Va. 398, 401–03, 193 S.E.2d 555, 558–59 (1972), this Court held that the furnishing of a written proof of claim is a condition precedent to recovery, if required by the insurance policy, but that the purpose of the proof of claim is to afford the insurer adequate opportunity to investigate the

claim, that is, to furnish the insurer with the particulars of the loss and all data necessary to determine its liability and the amount thereof; if, therefore, the insurer has not been prejudiced by the failure to furnish a proof of claim, the courts, being loath to enforce a forfeiture, may

Here, the insurer does not claim that its investigative rights with respect to the existence and the amount of the insured's loss have been prejudiced by the lack of a formal notice and proof of loss. Indeed, it will have an opportunity to be heard and offer any evidence on the existence and the amount of such loss on the trial of those issues in the garnishment proceeding as provided by the post-judgment garnishment statute.

This ties in with the question of whether garnishment of the employee fidelity insurance proceeds is allowable even though the amount of the loss has not been ascertained. There is a split of authorities on this point.

In general, a debt or claim which is uncertain or contingent, in the sense that it may never become due and payable, is not garnishable. *American National Insurance Co. v. United States Fidelity & Guaranty Co.*, 215 So.2d 245, 248 (Miss. 1968); 38 C.J.S. *Garnishment* § 87 (1943); 6 Am.Jur.2d *Attachment And Garnishment* § 126 (1963). A contingent interest is one in which liability is not certain and absolute, but depends upon some independent event. *Fico, Inc. v. Ghingher*, 287 Md. 150, 160, 411 A.2d 430, 436 (1980). Thus, a tort claim of the judgment debtor not yet liquidated as to liability or damages by a judgment or a settlement is a contingent debt and is not subject to garnishment. *See Ronnau v. Caravan International Corp.*, 205 Kan. 154, 162, 468 P.2d 118, 124 (1970); *American National Insurance Co. v. United States Fidelity & Guaranty Co.*, 215 So.2d 245, 248 (Miss. 1968); 38 C.J.S. *Garnishment* § 91 (1943); 6 Am.Jur.2d *Attachment And Garnishment* §§ 126–27 (1963).

The split of authorities is on the question of whether debts for which liability is fixed but for which payment is not yet due (unmatured debts) or the amount owed is not yet determined (unliquidated debts) are subject to post-judgment garnishment under the language of the statute in the jurisdiction. The weight of, and, in our opinion, the better reasoned, authorities view such

excuse the insured's failure to furnish the proof

debts as not being "contingent," and as being subject to garnishment because a "contingency" which will render a debt or claim not subject to garnishment is one that affects the debt itself, as distinguished from one that affects only its amount or the time or manner of its payment. 6 Am.Jur.2d *Attachment And Garnishment* § 126 (1963). This distinction was stated in the following manner in *Johnson v. Johnson*, 111 R.I. 183, 188, 300 A.2d 642, 645 (1973) (collecting cases at n. 1):

> Garnishment is allowed on an unliquidated claim where there is a certainty as to liability but a contingency as to amount. Where an obligation to pay exists, even though the amount of that obligation is undetermined, garnishment will lie where the amount is capable of definite ascertainment by the contract, or by the facts then known, or by testimony to be taken.

*See also Fico, Inc. v. Ghingher*, 287 Md. 150, 160–61, 411 A.2d 430, 436–37 (1980); *American National Insurance Co. v. United States Fidelity & Guaranty Co.*, 215 So.2d 245, 248 (Miss.1968) (proceeds of employee fidelity insurance subject to garnishment prior to determination of amount due); *Parker, Peebles & Knox v. El Saieh*, 107 Conn. 545, 554–55, 141 A. 884, 888 (1928) (proceeds of fire insurance subject to garnishment prior to determination of amount due); *Brainard v. Rogers*, 74 Cal. App. 247, 239 P. 1095 (1925) (proceeds of fire insurance subject to garnishment prior to the furnishing of proofs of loss and prior to "adjustment," or determination of the amount, of the loss); 38 C.J.S. *Garnishment* § 87 at 293 (1943); 6 Am.Jur.2d *Attachment And Garnishment* §§ 127, 168 (1963).

*W.Va.Code*, 38-5-10 [1931] clearly provides for the garnishment of unmatured debts: "... which debt or liability could be enforced, when due, or which property could be recovered, when it became returnable[.]" *W.Va.Code*, 38-5-18 [1931] provides for the fact finder to determine the amount of the debt, if at issue.

of claim.

In answer to the first certified question, we, in summary, hold that a judgment creditor (here, the bank) may maintain a garnishment proceeding in aid of execution to reach the proceeds of a judgment debtor's (the insured's) employee fidelity insurance policy when (as here) the judgment debtor has sustained a loss within the meaning of that policy, even though a formal notice and proof of loss has not been furnished to the insurer and even though the amount of the loss has not been determined at the time the garnishment proceeding is brought.

## II. *Third-party-beneficiary action*

The second certified question is whether the bank as a judgment creditor of an indemnitee (the insured) may maintain, as a third-party-beneficiary, a direct action against the indemnitor (the insurer) when the indemnity is against loss by the indemnitee.

Unlike garnishment, the third-party-beneficiary action is based not upon statutory law [5] but upon case law principles.

"The proper party to bring suit to recover on a fidelity bond for loss caused by the default or defalcation of a bond employee is, of course, the employer or the person for whose benefit the bond is given." 35 Am.Jur.2d *Fidelity Bonds And Insurance* § 87 (1967). As a general rule, the only party entitled to sue on a contract of indemnity is the indemnitee or someone in his right; one not a party to a contract of indemnity and for whose benefit it was not made may not maintain an action thereon against the indemnitor. Thus, a third person, although he may have an interest in the subject matter of the indemnity and have a right of action against the indemni-

tee, is not entitled to sue on the indemnity contract in his own name, not being a party thereto. 41 Am.Jur.2d *Indemnity* § 41 (1968). In order to maintain an action as a beneficial obligee of an indemnity bond, the plaintiff must allege and prove an interest in the performance of the duty, and that the duty was imposed either for his sole benefit or for the joint benefit of himself and others. *See Clark v. Nickell*, 73 W.Va. 69, 73–74, 79 S.E. 1020, 1022 (1913).

This Court has heretofore spoken to the question of whether a person may maintain a third-party-beneficiary action to reach the proceeds of an insurance contract indemnifying against loss but not against liability. In *State ex rel. Copley v. Carey*, 141 W.Va. 540, 91 S.E.2d 461 (1956), we held that an insurance contract indemnifying against loss is for the sole and exclusive benefit of the indemnitee and does not indemnify a third party against any loss or damage sustained by him. "[T]he promise of the indemnitor, in a contract of indemnity against loss sustained by the person indemnified, is not to answer for the debt, default or miscarriage of another person but is to make good the loss which results to the person indemnified from such debt, default, or miscarriage." 141 W.Va. at 549, 91 S.E.2d at 467. *See also Ronnau v. Caravan International Corp.*, 205 Kan. 154, 159–60, 468 P.2d 118, 122 (1970). "Since contracting parties are presumed to act for themselves, an intent to benefit a third person should be clearly expressed in the contract." *Id.*, 205 Kan. at 159, 468 P.2d at 122. The personal nature of an employee fidelity insurance policy as an indemnity against loss—by the indemnitee—precludes an intent to benefit a third

---

5. *W.Va.Code*, 55–8–12 [1931] is not applicable here. It provides:

> If a covenant or promise be made for the sole benefit of a person with whom it is not made, or with whom it is made jointly with others, such person may maintain, in his own name, any action thereon which he might maintain in case it had been made with him only, and the consideration had moved from him to the party making such covenant or promise.

"Where plaintiff seeks recovery as a third party beneficiary under a contract to which he is not a party under *W. Va. Code*, 55–8–12 [1923], it is necessary that plaintiff demonstrate that the contracting parties intended to confer a benefit upon the plaintiff by their contract." Syl. pt. 2, *Woodford v. Glenville State College Housing Corp.*, 159 W. Va. 442, 225 S.E.2d 671 (1976). The body of this opinion, *infra*, indicates that no benefit was intended to be conferred upon the judgment creditor in this case by the parties to the employee fidelity insurance policy.

person, such as a creditor of the indemnitee.

■ In answer to the second certified question we, in summary, hold that a judgment creditor (here, the bank) of an indemnitee (the insured) may not maintain, as a third-party-beneficiary, a direct action against the indemnitor (the insurer) when the indemnity is against loss by the indemnitee.

### III.  Assertion of debtor's defenses

The third certified question involves the insurer's standing to assert the comparative negligence of the bank and any other defenses which the insured failed to assert in the action resulting in a default judgment, in light of the fact that all of the insured's officers had resigned and all business operations had ceased prior to the bank's action against the insured.

■ Relying upon the provisions of *W. Va. Code*, 45–1–3 [1931],[6] the insurer contends that it may assert the insured's defenses against the bank in the garnishment proceeding and that the default judgment against the insured is not binding upon the insurer because it was "not a party regularly served with process" in the action in which the judgment was obtained.  We disagree.

■ *W. Va. Code*, 45–1–3 [1931] by its terms applies only to a "surety, guarantor or indorser (or his committee or personal representative)[.]"  The insurer argues that it is a surety.  It is not.  (It also is not a guarantor nor an indorser).  It is an indemnitor against loss.  An indemnitor against loss, as opposed to an indemnitor against liability, is not a surety.  *State ex rel. Copley v. Carey*, 141 W.Va. 540, 549, 91 S.E.2d 461, 467 (1956), observes the "vi-

tal distinction between a contract of suretyship and a contract of indemnity" against loss:  in the former the surety is liable along with the principal to the third party; in the latter the indemnitor against loss is liable only to the indemnitee for a loss sustained by him.  Indeed, *the insurer in the case now before us relies upon its limited scope of liability as an indemnitor against loss in order to defeat the third-party-beneficiary cause of action, but, with respect to asserting defenses, inconsistently argues, in essence, that it is an indemnitor against liability*.  Under the terms of the employee fidelity insurance policy, however, the insurer's responsibilities clearly would not have included defense of the underlying lawsuit against the insured.

In *Employers' Liability Assurance Corp. v. Citizens National Bank*, 85 Ind. App. 169, 178, 151 N.E. 396, 399 (1926), the court contrasted employee fidelity insurance and suretyship:

> "[W]hatever the form of the contract, it is well established that guaranteeing the fidelity of employees and persons holding positions of trust is a form of insurance, and that such a contract is subject to the rules applicable to insurance contracts generally, and not to the rules applied to ordinary sureties for accommodation."

The insurer's reliance on *W. Va. Code*, 45–1–3 [1931] is, therefore, misplaced.

As a garnishee, what defenses may an indemnitor against loss assert?

A garnishee may interpose such objections and defenses, of law or fact, as may be necessary for the protection of his interest, but ordinarily may not set up matters which affect the defendant only. . . .  He cannot present the defense that the defendant does not owe the at-

---

6.  *W. Va. Code*, 45–1–3 [1931] provides in its entirety:

Whether the surety, guarantor or indorser (or his committee or personal representative) shall have given notice as provided in the first section of this article or not, no judgment, decree or recovery rendered, entered, or had in any suit, action, prosecution or proceeding, to which the surety, guarantor or indorser (or his committee or personal representative) was not a party regularly served with process,

shall be in any wise binding on such surety, guarantor or indorser (or his committee or personal representative), and, notwithstanding such decree, judgment or recovery, the surety, guarantor or indorser (or his committee or personal representative) shall be allowed to make any such defense in any action, suit or proceeding instituted against him, as could have been made in the suit in which such decree, judgment or recovery was had.

taching creditor, especially where there has been a judgment against the defendant in favor of the attaching creditor. 38 C.J.S. *Garnishment* § 196 (1943). "Ordinarily, the only adjudicable issue [in a post-judgment garnishment proceeding] is whether the garnishee is liable to the judgment-debtor, and if so, the amount due." *Butler v. Butler*, 219 Va. 164, 166, 247 S.E.2d 353, 354 (1978). "The garnishee may, of course, defend on the ground that no moneys are due by it to the judgment debtor, [citation omitted], but may not attack the validity of the judgment on which the attachment issues." *Gorn v. Kolker*, 213 Md. 551, 553, 133 A.2d 65, 67 (1957). "[B]oth the garnishee and the judgment debtor [7] may appear to contest the condemnation of the funds garnished. [citation omitted] But neither can contest the claim merged in the judgment." *Id.*, 213 Md. at 553–54, 133 A.2d at 67.

The rationale for ordinarily denying the garnishee the right to challenge the validity of the existing judgment is that the garnishee is, vis-a-vis the judgment creditor, a mere stakeholder of the debt owed by the garnishee to the judgment debtor. *See Baltimore & O.R.R. v. Vanderwerker*,

44 W.Va. 229, 235–36, 28 S.E. 829, 831 (1897). "The judgment itself is conclusive proof of the judgment debtor's obligation to the judgment creditor." *Fico, Inc. v. Ghingher*, 287 Md. 150, 159, 411 A.2d 430, 436 (1980).

 In answer to the third certified question we, in summary, hold that an indemnitor against loss (the insurer) ordinarily may not, in a garnishment-in-aid-of-execution proceeding, assert defenses against the judgment creditor (here, the bank) which the indemnitee/judgment debtor (the insured) failed to assert, such as the comparative negligence of the judgment creditor (the bank).

Having answered the certified questions, we dismiss this case from the docket of this Court.

Certified questions answered; case dismissed.

---

7. In *Sauls v. Howell*, 172 W.Va. 528, 309 S.E.2d 26 (1983), this Court held that the judgment debtor was entitled, as a matter of procedural due process, to notice of the institution of a post-judgment garnishment proceeding. In *Vanscoy v. Neal*, 174 W.Va. 53, 322 S.E.2d 37 (1984), we held that notice to a judgment debtor that his wages are being suggested must include a reference to the availability of exemptions existing under state or federal law that may be asserted by him.