[No. 25358-1-I.  Division One.  August 5, 1991.]

ESTATE OF K.O. JORDAN, ET AL, *Respondents*, v.
HARTFORD ACCIDENT AND INDEMNITY
COMPANY, *Appellant*.

---

[4]As a result of the holding, this court need not address the parties' other arguments.

*John F. Kruger, Gregory Sisk,* and *Karr Tuttle Campbell,* for appellant.

*B. David Thomas* and *Kurt Lichtenberg,* for respondents.

WEBSTER, A.C.J. — Hartford Accident and Indemnity Company appeals an order granting partial summary judgment in favor of the plaintiffs. Hartford contends that the plaintiffs have no standing to sue under Hartford's fidelity bond. Hartford further contends that even if the

plaintiffs had standing, Hartford is not liable under the terms of the bond. We agree and reverse.

FACTS

Lakeside Escrow conducted business under the Escrow Agent Registration Act (RCW 18.44) and had several offices in the Puget Sound area. As required by the act, Lakeside obtained a fidelity bond, which was issued by Hartford. In May of 1987, Thomas Tinsley, the vice-president and office manager of Lakeside Escrow, took checks from customers that should have been deposited in the company's trust account and instead deposited them into the business's general operating account. The moneys were used to satisfy obligations to business creditors. On occasion Tinsley would shift funds from the operating account back to the trust account.

In December of 1987, the Washington State Department of Licensing conducted an audit of Lakeside Escrow's trust account. As a result of the audit, the Department suspended Lakeside's certificate in February of 1988 and ordered the trust accounts frozen. A few weeks later, Lakeside filed for bankruptcy under Chapter 7 and was liquidated. At the time the accounts were frozen, the Bellevue trust account was approximately $180,000 short due to Tinsley's shifting of funds. As a result, Jordan and a number of other persons lost moneys held in trust for their benefit. Tinsley was convicted for embezzling funds from the trust account and sentenced to 17 months in prison.

The bankruptcy trustee made a claim on the bond Hartford issued to Lakeside, but Hartford denied liability. The trustee, however, did not initiate a lawsuit against Hartford. Instead, the trustee entered judgments against Lakeside Escrow on behalf of the plaintiffs in the amount of the trust funds lost by each. After the liquidation, the assets remaining were applied pro rata to the plaintiffs' judgments. The trustee also assigned plaintiffs whatever

rights Lakeside had under the fidelity bond issued by Hartford, stating that he believed their claims against Hartford were valid.

Jordan and the other plaintiffs (hereinafter Jordan) brought suit against Hartford for declaratory relief and damages, seeking recovery under the bond. Hartford moved for judgment on the pleadings or, in the alternative, summary judgment. Jordan filed a cross motion for summary judgment. On November 21, 1989, the court granted Jordan's motion for summary judgment on liability, reserving the question of the amount of damages for later determination.[1]

## DISCUSSION

We first address Hartford's claim that Jordan lacks standing to seek coverage under the fidelity bond Hartford issued to Lakeside Escrow. A fidelity bond is an indemnity insurance contract in which the insurer for consideration agrees to indemnify the insured for loss "arising from want of integrity, fidelity or honesty of employees or other persons holding positions of trust." *Commercial Bank of Bluefield v. St. Paul Fire & Marine Ins. Co.*, 336 S.E.2d 552, 556 (W. Va. 1985); *see Ronnau v. Caravan Int'l Corp.*, 205 Kan. 154, 468 P.2d 118 (1970). A fidelity bond indemnifies only against proven losses suffered by the insured; it does not indemnify the insured against liability. *Ronnau*, 468 P.2d at 122-23.

The bond issued by Hartford states that Hartford "agrees to indemnify *the Insured* against loss of money or other property which *the Insured* shall sustain resulting directly from one or more fraudulent or dishonest acts", and excludes coverage for "damages of any type for which the Insured is legally liable, *except* direct compensatory damages arising from a loss covered under this Bond". (Italics ours.) The bond's language thus indicates that

---

[1]While this appeal was pending, the parties resolved the question of the amount of damages sustained by plaintiffs. Four orders were entered stipulating the damages to be awarded each party if Hartford loses on appeal.

Hartford's coverage extends only to Lakeside Escrow and not to parties to whom Lakeside Escrow may be liable.

■ A company issuing a fidelity bond to an escrow agent is bound by the provisions of the statute pursuant to which it is issued. *State ex rel. Tollefson v. Novak*, 7 Wn.2d 544, 552, 110 P.2d 636 (1941). "Conditions repugnant to the statute will be treated as surplusage, and statutory provisions which are not expressed in the bond will be inserted therein." *Tollefson*, at 552-53. The Escrow Agent Registration Act provides that an escrow agent applying for a certificate of registration or for any renewal or reinstatement of registration

> shall satisfy the director that it has obtained the following as evidence of financial responsibility:
> (1) A fidelity bond providing coverage in the aggregate amount of two hundred thousand dollars covering each corporate officer, partner, escrow officer, and employee of the applicant engaged in escrow transactions . . .
>
> . . . .
> For the purposes of this section, a "fidelity bond" shall mean a primary commercial blanket bond or its equivalent satisfactory to the director and written by an insurer authorized to transact surety business in the state of Washington. Such bond shall provide fidelity coverage for any fraudulent or dishonest acts committed by any one or more of the employees or officers as defined in the bond, acting alone or in collusion with others. *Said bond shall be for the sole benefit of the escrow agent and under no circumstances whatsoever shall the bonding company be liable under the bond to any other party.* The bond shall name the escrow agent as obligee and shall protect the obligee against the loss of money or other real or personal property belonging to the obligee, or in which the obligee has a pecuniary interest, or for which the obligee is legally liable or held by the obligee in any capacity, *whether the obligee is legally liable therefor or not.* The bond may be canceled by the insurer upon delivery of thirty days' written notice to the director and to the escrow agent.
>
> . . . .
> Except as provided in RCW 18.44.360, the fidelity bond and the errors and omissions policy required by this section shall be kept in full force and effect as a condition precedent to the escrow agent's authority to transact escrow business in this state, and the escrow agent shall supply the director with satisfactory evidence thereof upon request.

(Italics ours.) RCW 18.44.050. By the terms of the statute, a company issuing a fidelity bond to an escrow agent is liable only to the escrow agent, and not to third parties, in the event of a loss due to fraudulent or dishonest acts. There is no language in either the bond or the statute giving Jordan standing to recover under the bond. The fact that an insured incurs liability to third parties for losses resulting from employee dishonesty does not transform the fidelity bond into a contract indemnifying against the insured's liability to third parties. *Commercial Bank of Bluefield*, at 556. Courts have also rejected attempts to make third parties beneficiaries under the bond. *Commercial Bank of Bluefield*, at 558-59; *Everhart v. Drake Mgt., Inc.*, 627 F.2d 686, 691-92 (5th Cir. 1980). We conclude that neither the bond nor the statute gives Jordan standing to assert a cause of action against Hartford.

Jordan contends that he nevertheless has standing to assert a claim as an assignee of Lakeside's right to recover from Hartford under the bond. Lakeside's bankruptcy trustee explicitly assigned Lakeside's claim to Jordan pursuant to his power as trustee.[2] Hartford contends that the terms of its bond specifically prohibited assignment.

■ ■ We find no specific prohibition against assignment in the bonding agreement. Absent a specific prohibition, contractual rights are assignable. *Old Nat'l Bank of Wash. v. Arneson*, 54 Wn. App. 717, 723, 776 P.2d 145, *review denied*, 113 Wn.2d 1019 (1989). Hartford presents numerous cases demonstrating that a fidelity bond, by its nature, prohibits liability to third parties, and that courts have refused to allow third parties to "step into the shoes" of an insured to maintain an action against a bonding company. *See, e.g., Everhart*, at 691. None of the cases cited by Hartford, however, involved a situation in which

---

[2]Lakeside's bankruptcy trustee stated that he believed Lakeside's claim against Hartford was valid.

*a bankruptcy trustee assigned to the plaintiff a cause of action against the insurer.* Jordan's standing to sue Hartford as a third party beneficiary is a different issue from whether he may sue Hartford as an assignee of Lakeside's contractual rights. In a bankruptcy proceeding, a bankrupt party's cause of action is a property right that passes to the bankruptcy trustee as a matter of law, regardless of any contract provisions to the contrary. *See* 11 U.S.C. § 541(c)(1)(A); *Carlock v. Pillsbury Co.*, 719 F. Supp. 791, 856 (D. Minn. 1989). Even if the Legislature intended RCW 18.44.050 to prevent bankruptcy trustees from asserting actions on fidelity bonds, as Hartford suggests, the state provision may impermissibly conflict with and be preempted by federal bankruptcy law. Based on the trustee's authority to assign Lakeside Escrow's action, Jordan has proper standing to assert the action against Hartford.

█ We next address whether the bond issued by Hartford covered the loss at issue. Hartford contends that since Tinsley took money destined for one account and deposited it in another, Lakeside Escrow suffered no loss, and Jordan therefore is not entitled to recover. RCW 18.44.050(2) states in part:

> The bond shall name the escrow agent as obligee and shall protect the obligee *against the loss of money or other real or personal property* belonging to the obligee, or in which the obligee has a pecuniary interest, or for which the obligee is legally liable or held by the obligee in any capacity, whether the obligee is legally liable therefor or not.

(Italics ours.) The bond issued by Hartford is similarly worded. It indemnifies against "loss of money or other property" sustained by the insured, and excludes coverage for "damages of any type for which the Insured is legally liable, *except direct compensatory damages arising from a loss covered under this Bond*". (Italics ours.) In *Fidelity & Deposit Co. v. USAFORM Hail Pool, Inc.*, 463 F.2d 4 (5th Cir. 1972), *vacated and remanded on other grounds*, 523

F.2d 744 (1975), the court held that paying corporate obligations with trust funds did not entitle the insured to recover on a fidelity bond when the insured itself suffered no loss. *Fidelity & Deposit*, at 5. *See also Puget Sound Nat'l Bank v. St. Paul Fire & Marine Ins. Co.*, 32 Wn. App. 32, 45, 645 P.2d 1122 (fidelity bond covers only actual loss), *review denied*, 97 Wn.2d 1036 (1982); *Towne Mgt. Corp. v. Hartford Accident & Indem. Co.*, 627 F. Supp. 170, 174-75 (D. Md. 1985) (recovery not permissible under fidelity bond, which contained language identical to the language in the case at bar, absent proof that the insured sustained an actual present loss); *Everhart*, at 691. The court further held that the insolvency of the insured did not change the result.

> The case must be viewed as if the insured companies were solvent and had adequate funds in their general accounts to replace the money diverted from the premium accounts. If the insureds cannot recover on the bond in that situation, their insolvency does not improve their case against the bonding company.

*Fidelity & Deposit*, at 5-6. The court indicated that only funds diverted for uses other than legitimate corporate purposes would represent a loss to the insured. *Fidelity & Deposit*, at 7.

■ Jordan does not appear to contest the assertion that Lakeside Escrow itself suffered no loss. Nor does Jordan provide any authority to support the proposition that he is entitled to recover under the bond when Lakeside Escrow suffered no actual loss.[3] Thus, we are left only with

---

[3]Jordan asserts that "[t]he total loss sustained by Lakeside Escrow is not the total of all the thefts as was asserted by the insured in *American Trust & Sav. Bank [v. United States Fid. & Guar. Co.*, 418 N.W.2d 853 (Iowa 1988)], rather it is the net of thefts less replacements as held by the Iowa court — here $180,000.00." Jordan's reliance on *American Trust* is misplaced since in that case the insured *did* suffer an out-of-pocket loss. *American Trust & Sav. Bank*, at 855. However, the amount of money diverted exceeded the amount of money the insured bank actually lost because the embezzler had repaid some of the money and interest he fraudulently "borrowed" from the bank. The court held that the insurer was liable only for the bank's out-of-pocket loss, not for the total amount that had been illegally diverted. *American Trust.*

Jordan's assertion that the statute was intended to protect the public and, as a matter of public policy, should be construed to allow recovery under the bond. Jordan places heavy emphasis on RCW 18.44.370, which provides for self-insurance in lieu of a fidelity bond if the corporation will "operate for the benefit of the public and . . . in a financially responsible manner". However, neither this provision nor any other statutory provision under the Escrow Agent Registration Act suggests that the fidelity bond insurer should be responsible for the insured's liabilities resulting from an illegal diversion of funds, when the insured itself suffered no loss. We are bound by the clear and unambiguous language of the Escrow Agent Registration Act. *See State v. Anderson*, 58 Wn. App. 107, 111, 791 P.2d 547 (1990).[4]

In view of our conclusion that Lakeside suffered no actual loss, and that Jordan therefore may not recover under the bond, we do not reach the issue of whether Hartford's bond covered Tinsley's actions. Because Lakeside suffered no loss, Hartford is not liable to Jordan under the bond.

Accordingly, the judgment is reversed.

SCHOLFIELD and KENNEDY, JJ., concur.

Reconsideration denied September 20, 1991.

Review granted at 118 Wn.2d 1014 (1992).

---

[4]Hartford contends that holding the insurer responsible under these circumstances could provide an incentive to divert funds to obtain a windfall.