Herbert O. JENSEN, Plaintiff
and Appellant,

v.

Edwin F. ZUERN, Elaine Little, Wanda
Bier, Karen Halldorson, Marion Rott,
Timothy Schuetzle, Defendants and Ap-
pellees,

and

American Correctional Association, State
Bonding Fund, Co–Defendants and
Appellees.

Civ. No. 930386CA.

Court of Appeals of North Dakota.

May 31, 1994.

Herbert O. Jensen, pro se. Submitted on brief.

Courtney McDonald Koebele (argued), Asst. Atty. Gen., Bismarck, for defendants and appellees.

Jane L. Dynes (argued), Serkland, Lundberg, Erickson, Marcil & McLean, Ltd., Fargo, for co-defendant and appellee American Correctional Ass'n.

HOBERG, Surrogate Judge.

Herbert O. Jensen, an inmate in the maximum security unit at the North Dakota penitentiary, appeals from an order denying his motion to amend a judgment and from an amended judgment dismissing his action and awarding attorney's fees to the American Correctional Association (ACA) and to the State of North Dakota. We affirm in part and reverse in part.

In affirming the dismissal of a prior action by Jensen against Warden Tom Powers, the North Dakota Supreme Court ordered that costs and disbursements for that appeal be taxed against Jensen by the district court. *Jensen v. Powers*, 472 N.W.2d 223 (N.D. 1991). When Powers moved for costs in the district court, Jensen resisted and filed a "motion to strike motion for costs and disbursements." Jensen also filed a "notice of exemptions," claiming exemptions under N.D.C.C. ch. 28–22. The district court taxed costs and disbursements of $85 against Jensen on August 7, 1991.

Jensen refused to authorize a transfer of funds from his inmate account and again claimed exemptions under N.D.C.C. ch. 28–22. After being advised by legal counsel Edwin F. Zuern that, under N.D.C.C. § 12–48–15(4), penitentiary officials were authorized to withdraw funds from Jensen's inmate account to pay his court costs, Elaine Little, the director of the Department of Corrections and Rehabilitation, directed Marion Rott, an employee at the penitentiary, to withdraw $85 from Jensen's inmate account. According to a computer ledger listing Jensen's inmate accounts, $85 was debited from his personal inmate account on February 5, 1992, leaving a balance in that account of minus $65.98. The computer

ledger for Jensen's personal account also listed a February 12, 1992 deposit of $31 for "PEN PAY—EDUCATION," leaving a balance of minus $34.98, and a February 24, 1992 deposit of $436.50 for "UST TAX REFUND," leaving a balance of $401.52. Jensen filed a grievance with penitentiary officials about the $85 debit. Jensen's grievance was heard and rejected by Wanda Bier, a grievance hearing officer. Tim Schuetzle, the new warden, sustained Bier's decision.

Jensen then sued Zuern, Little, Rott, Bier, Schuetzle, and Karen Halldorson, another penitentiary employee, (hereinafter collectively referred to as "individual state defendants") as well as ACA and the North Dakota State Bonding Fund, alleging:

"When prison officials transferred $85.00 to the NDSP account from Jensens' inmate account without signature violated Due Process, Equal Protection, Equal Treatment, without giving him a hearing, denied him those entitlements under the U.S. Constitution of the Taking Clause of the 5th Amendment, 14th Amendment, ACA Standards 3–4045 & 3–4279 & ND Constitution Article I, § 12.

\* \* \* \* \* \*

"Plaintiff alleges that defendant Zuern violated NDCC 28–20—Judgments & 28–22—Exemptions when he conspired with Elaine Little, Wanda Bier, Karen Halldorson, Marion Rott & Timothy Schuetzle to take monies from his prison inmate account which were deposited from a tax refund from a annuity received from his USAF pension & protected under Title 10 USC § 1440, Title 38 USC § 1501 & Title 26 USC § 6334 in violation of Title 42 USC § 1985(3) & conspiracy laws of North Dakota.

\* \* \* \* \* \*

"Plaintiff's 1ST & 14TH Amendment right of access of the courts was violated when Marion Rott presented Respondant's Statement of Costs & Disbursements eleven days before they were filed in District court for payment of $160.00, refusing to show or give envelope that contained the documents, violating the Inmate Hand-

book, dtd January 1990, NDSP Policies & Manual, MAIL, TELEPHONE & VISITING, dtd 11/7/90, revised 3/26/92 & ACA Standards 3–4433, 3–4434, & 3–4435, threatening plaintiff with punishment if he did not sign a Individual Transfer Voucher violated his Due process rights.

\* \* \* \* \* \*

"Plaintiff alleges that the American Correctional Association after signing contract with NDSP on November 6, 1991, has failed to enforce ACA Standards 3–4045, 3–4279 for prison inmate funds or 3–4433, 3–4434 & 3–4435 handling legal mail under case law *Jensen v. Klecker*, 648 F.2d 1179, 1180 (C.A.8 1981) & failed to enforce compliance by strict audits violates Plaintiffs' constitutional rights under the Equal Treatment & Equal Protection Clause of the 14th Amendment to the U.S. Constitution."

ACA sought dismissal of Jensen's complaint and attorney's fees, asserting that Jensen's action failed to state a claim and was frivolous. The other defendants also moved to dismiss Jensen's complaint, alleging that the individual state defendants received insufficient process and that the complaint failed to state a claim against the State Bonding Fund.

The district court concluded Jensen's "allegations are without merit, are groundless in law and are frivolous and, in many respects, just plain silly" and dismissed

"(1) as to ACA for failure to state a claim upon which relief can be granted, (2) as to the [state] defendants individually for sovereign immunity, and (3) as to the State Bonding Fund for insufficiency of service and failure to state a claim upon which relief can be granted."

The court awarded $1,000 in attorney's fees to ACA and $1,000 in attorney's fees to the State "inasmuch as the individual defendants are state employees or a state agency each being represented in this action by the State of North Dakota. Section 28–26–01(2), NDCC." Pursuant to N.D.R.Civ.P. 59(j), Jensen moved to amend the judgment of dismissal, contending that ACA conspired with the individual state defendants. The district court denied Jensen's motion and an amended judgment of dismissal was entered. Jensen appealed from the order denying his motion to amend the judgment and from the amended judgment.

### ACA

Jensen's complaint essentially alleged that ACA failed to compel the penitentiary to adhere to ACA's accreditation standards for inmates' accounts and legal mail.

In support of its motion to dismiss Jensen's complaint, ACA submitted an affidavit of its executive director, James A. Gondles, Jr., which stated:

"3. ACA is a private, not-for-profit corporation organized under the laws of the State of New York. ACA's over 20,000 members include corrections officials, sheriffs, probation and parole officers, members of the judiciary, ex-offenders and others interested in improvement of the correctional system in the United States.

\* \* \* \* \* \*

"5. Through its Commission on Accreditation for Corrections division, ACA maintains a private, non-governmental, voluntary certification program pursuant to which correctional facilities may apply for ACA accreditation. Accreditation is based upon an applicant correctional facility's demonstration of compliance with correctional facility standards adopted by ACA.

"6. Because ACA's accreditation program is entirely voluntary, ACA has no authority to require a correctional facility to adopt any procedures or to change any existing procedures. Rather, ACA's sole authority is to deny accreditation to any facility found not to be in compliance with ACA's standards.

"7. No governmental or quasi-governmental organization requires that ACA operate its accreditation program. To the best of ACA's knowledge, no governmental or quasi-governmental organization required that the North Dakota State Penitentiary apply for ACA accreditation.

"8. ACA's accreditation program is funded completely by the fees paid to ACA by applicant correctional facilities under

the terms of an agreement which each facility signs with ACA. Although ACA does receive grants from the federal government, no federal grant money is used to operate the correctional facility accreditation program.

"9. The North Dakota State Penitentiary was accredited by ACA based in part on a facility inspection which took place on November 4–6, 1991."

■ Additionally, when Jensen filed his complaint, he submitted an affidavit with attached exhibits. In dismissing Jensen's action, the district court did not exclude Jensen's materials or Gondles' affidavit. Pursuant to N.D.R.Civ.P. 12(b) and (c), the court therefore treated ACA's motion to dismiss Jensen's complaint as a motion for summary judgment under N.D.R.Civ.P. 56. *Livingood v. Meece*, 477 N.W.2d 183 (N.D.1991). Accordingly, we review the dismissal of Jensen's action under the standards applicable to summary judgment.

■ Summary judgment is proper when, after viewing the evidence in the light most favorable to the opposing party and giving that party the benefit of all favorable inferences, there is no genuine dispute as to either the material facts or the inferences to be drawn from undisputed facts. *Livingood v. Meece*. Even when factual disputes exist, summary judgment is appropriate if resolution of those factual disputes would not change the result. *Volk v. Wisconsin Mortgage Assurance Co.*, 474 N.W.2d 40 (N.D. 1991).

■ Jensen characterizes his action as a civil rights claim under 42 U.S.C. § 1983.[1] A claim under § 1983 must allege that conduct of a defendant acting under color of state law

deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or by the laws of the United States. *Howlett v. Rose*, 496 U.S. 356, 110 S.Ct. 2430, 110 L.Ed.2d 332 (1990); *Bell v. Stigers*, 937 F.2d 1340 (8th Cir.1991); *Jones v. Gutschenritter*, 909 F.2d 1208 (8th Cir.1990); *Livingood v. Meece*. See 1 Nahmod, *Civil Rights and Civil Liberties Litigation, The Law of Section 1983*, § 2.01 (3rd ed. 1991).

■ ACA is a private corporation and not a governmental entity. In determining if a non-governmental entity acts under color of state law for purposes of § 1983, the plaintiff must establish that a claimed deprivation resulted from the exercise of a right or privilege created by the state or by an entity for whom the state is responsible and that the party charged with the deprivation is an entity that fairly can be described as a state actor. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982); *Simescu v. Emmet County Dept. of Social Services*, 942 F.2d 372 (6th Cir.1991); *Jones v. Gutschenritter*. See 1 Nahmod, *supra*, at § 2.04. When a non-governmental entity acts with some state involvement, the issue is whether the private conduct ought to be treated as if it were state conduct and is resolved by requiring some nexus between the challenged conduct and the state. *Id.* Although there is no precise rule for analyzing that nexus, state action generally exists if the state requires or is otherwise significantly involved in the conduct, or if the non-governmental entity exercises a traditional state function. *Id.*

Jensen's complaint did not allege that ACA was acting under color of state law. It is undisputed that, for purposes of accreditation, ACA contracted with the penitentiary to

---

1. 42 U.S.C. § 1983 provides:
"§ 1983. *Civil action for deprivation of rights*
"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For the purposes of this section, any Act of Con-

gress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia."
Although Jensen also alleged violations of state constitutional provisions in his complaint, he has not argued that a direct cause of action exists against the defendants under the state constitution. *See Livingood v. Meece*, 477 N.W.2d 183 (N.D.1991); *Kristensen v. Strinden*, 343 N.W.2d 67 (N.D.1983). We therefore agree with the characterization of his action as under § 1983 and we treat it as such.

124

conduct a voluntary review of the facility to determine compliance with ACA's accreditation standards. Jensen has cited no law imposing a duty on ACA to require correctional facilities to adopt or to change any of their procedures to comply with ACA's accreditation standards; rather, ACA is limited to denying accreditation to facilities that do not meet those standards.

■ Jensen's argument that ACA was acting under color of state law because it entered into a contract with the penitentiary to conduct accreditation service is not persuasive. A non-governmental entity that contracts to provide a product or service to a state agency is not necessarily acting under color of state law. *Simescu v. Emmet County Dept. of Social Services; Steading v. Thompson,* 941 F.2d 498 (7th Cir.1991), *cert. denied,* — U.S. —, 112 S.Ct. 1206, 117 L.Ed.2d 445 (1992); *McGillicuddy v. Clements,* 746 F.2d 76 (1st Cir.1984); *see also Rendell–Baker v. Kohn,* 457 U.S. 830, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982).

■ Here, ACA has not contracted to provide a service or a function traditionally provided by the state. Instead, ACA sets standards for voluntary accreditation of correctional facilities. Although the purpose of accreditation is to improve correctional facilities, there is no requirement that the penitentiary seek accreditation and no requirement that accreditation must be granted before the penitentiary can operate. The contract between ACA and the penitentiary was for the purpose of inspecting and accrediting the penitentiary, and, other than accreditation, ACA has no power to enforce compliance with its standards. ACA's contract to provide accreditation services to the penitentiary does not render its conduct under color of state law, and Jensen's claim that he was somehow a third-party beneficiary of that contract is meritless. *Compare Blair v. Anderson,* 325 A.2d 94 (Del.1974) [state prison contracted with federal prison to house federal prisoner in state facility].

■ Jensen also argues that the district court abused its discretion "in refusing to recognize that American Correctional Association was not registered in the State of North Dakota under ultra vires doctrine [and] had no standing to complain about § 1983 civil action for lack of enforcement of contract with department of corrections and rehabilitation."

However, N.D.C.C. § 10–22–19 provides, in part:

> "The failure of a foreign corporation to obtain a certificate of authority to transact business in this state does not impair the validity of any contract or act of the corporation, and does not prevent the corporation from defending any action, suit, or proceeding in any court of this state."

The plain and unambiguous language of this statute refutes Jensen's argument.

■ Jensen also argues that the district court abused its discretion "in refusing to address [his] conspiracy claim against NDSP prison officials & ACA." Although Jensen's complaint alleged a conspiracy among the individual state defendants, even the most liberal reading of that complaint does not include ACA in the conspiracy. Jensen first raised ACA's alleged involvement in a conspiracy in his motion to amend the judgment under N.D.R.Civ.P. 59(j). However, Jensen made no attempt to amend his complaint and has not suggested any factual basis to support his allegations. ACA's only involvement in this case was to accredit the penitentiary, and there is nothing in this record to indicate that ACA in any way participated in the alleged conduct by the individual state defendants.

Whether we treat Jensen's post-judgment motion as a motion to amend the judgment under N.D.R.Civ.P. 59(j), or as a motion to amend his complaint, we conclude the trial court did not abuse its discretion in denying it. *See First Trust Co. of North Dakota v. Scheels Hardware & Sports Shop,* 429 N.W.2d 5 (N.D.1988); *Hellman v. Thiele,* 413 N.W.2d 321 (N.D.1987); *Erdmann v. Rants,* 442 N.W.2d 441 (N.D.1989); *Production Credit Ass'n of Fargo v. Foss,* 391 N.W.2d 622 (N.D.1986).

ACA was not, as a matter of law, acting under color of state law in its relations with the penitentiary, and dismissal of Jensen's

§ 1983 action against it was therefore proper.

## INDIVIDUAL STATE DEFENDANTS

Jensen asserts that the individual state defendants denied him due process when they conspired to debit $85 from his inmate account. He argues the money in his inmate account was a tax refund from his Air Force pension and was exempt from process under federal law. The individual state defendants respond that Jensen's claims were not cognizable under § 1983 because he received due process when the district court taxed costs against him in the prior proceeding. They also assert that they were entitled to qualified immunity because they reasonably believed they were following the law when the $85 was debited from Jensen's personal inmate account under the prior district court order and N.D.C.C. § 12–48–15(4). They further assert that the money in Jensen's personal inmate account was a tax refund, not his military pension, and that Jensen's federal exemption claim was not made until after the money had been debited from his personal inmate account.

■ Jensen sued the individual state defendants in their "individual & personal capacities for damages arising from their official acts as agents of" the state. State officials sued for damages in their personal or individual capacities are "persons" under § 1983. *Hafer v. Melo,* —— U.S. ——, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991); *Livingood v. Meece. Compare Will v. Michigan Dept. of State Police,* 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989) [state officials sued in their official capacities are not "persons" subject to liability under § 1983]. However, the individual state defendants are prison officials who may claim qualified immunity as a defense. *Procunier v. Navarette,* 434 U.S. 555, 98 S.Ct. 855, 55 L.Ed.2d 24 (1978). *See Anderson v. Creighton,* 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987); *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Livingood v. Meece.*

In *Livingood v. Meece,* 477 N.W.2d at 192, the North Dakota Supreme Court explained the requirements of "qualified immunity":

"The doctrine of qualified immunity recognizes the need of government officials to be free from harassing lawsuits and apprehension of personal liability when they exercise authority and discretion while performing their jobs in the public interest. *Butz v. Economou,* 438 U.S. 478, 506–507, 98 S.Ct. 2894, 2911, 57 L.Ed.2d 895 (1978). Determining whether the defense is applicable requires 'an objective inquiry into the legal reasonableness of the official action.' *Anderson v. Creighton,* 483 U.S. 635, 645, 107 S.Ct. 3034, 3042, 97 L.Ed.2d 523 (1987). In *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982), the Supreme Court held that 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' *See also Lefor Ed. Ass'n v. Lefor Public School Dist. No. 27,* 285 N.W.2d 524 (N.D.1979). The *Harlow* Court further explained:

"'Reliance on the objective reasonableness of an official's conduct, as measured by reference to clearly established law, should avoid excessive disruption of government and permit the resolution of many insubstantial claims on summary judgment. On summary judgment, the judge appropriately may determine, not only the currently applicable law, but whether that law was clearly established at the time an action occurred. If the law at that time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to "know" that the law forbade conduct not previously identified as unlawful. Until this threshold immunity question is resolved, discovery should not be allowed. If the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct. Nevertheless, if the official pleading the defense claims extraordinary circumstances and can prove that he neither knew nor should have

known of the relevant legal standard, the defense should be sustained. But again, the defense would turn primarily on objective factors.' *Harlow, supra,* 457 U.S. at 818–819, 102 S.Ct. at 2738 [Footnotes omitted].

"A constitutional right is 'clearly established' if the 'contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful ... but it is to say that in the light of preexisting law the unlawfulness must be apparent.' *Creighton, supra,* 483 U.S. at 640, 107 S.Ct. at 3039. Although the applicability of the qualified immunity defense is ordinarily a question of law [*Mitchell v. Forsyth,* 472 U.S. 511, 528, 105 S.Ct. 2806, 2816, 86 L.Ed.2d 411 (1985) ], under some circumstances, resolution of the issue may require that a factfinder determine the reasonableness of the official's actions.

*See Morris v. Clifford,* 903 F.2d 574, 579 (8th Cir.1990), and cases cited therein."

We consider the individual state defendants' alleged conduct in the context of whether it violated clearly established statutory or constitutional rights of which a reasonable person would have known.

When Jensen's personal inmate account was debited, N.D.C.C. § 12–48–15 [2] authorized the warden to guide inmates in the proper use of their funds to pay court costs. In *Ennis v. Dasovick,* 506 N.W.2d 386 (N.D. 1993), in the context of a § 1983 action alleging a violation of the 8th Amendment based on the penitentiary's failure to pay for an inmate's eyeglasses, the North Dakota Supreme Court discussed two types of inmate accounts, a temporary aid account and a personal spendable account. Our Supreme Court construed N.D.C.C. § 12–48–15 to allow payment for medical expenses only from an inmate's personal spendable account and not from the inmate's temporary aid account, because any money in the inmate's tempo-

**2.** N.D.C.C. § 12–48–15 provided:

"Disposition of moneys earned—Warden to keep account of money earned by inmates—Investment in interest-bearing accounts.

"1. The warden of the penitentiary shall keep an account for each inmate. Fifty percent of the earnings of inmates shall be deposited to the credit of their account until they have accumulated in that account a sum of money as provided by penitentiary rules and regulations from their earnings at the penitentiary, and the other fifty percent of the earnings must be paid to the inmates on a regular basis. All moneys in the inmate's account shall be paid to the inmate in full when discharged.

"2. Inmates may, in writing, authorize the warden or designee to deposit any of their accumulated earnings from the prison industries, hobby, work release, or any other prison program in an interest-earning account in the Bank of North Dakota for the benefit of the inmate. The account shall be a two signature account requiring the inmate's signature and that of an authorized designated officer or employee of the state penitentiary for withdrawal.

"3. Other inmate income or funds from sources outside of the penitentiary may be directly deposited or invested by the inmate in any bank or other organization, unless sentencing stipulations, court orders, the inmate's competency, or other interests of the inmate require that the warden deposit such income

or funds or a portion thereof in the above-noted Bank of North Dakota account for the inmate's benefit and protection. Before making such a deposit of funds or income from sources outside of the penitentiary for the inmate's benefit and protection, the warden must receive the approval of the director of the division of adult services and provide a written letter of explanation to the inmate. Funds directly invested or deposited by inmates into their independent accounts, even when assisted in doing so by an officer or employee of the penitentiary, shall in no way make the penitentiary or its officers or employees responsible or accountable for such inmate's investments and deposits.

"4. The warden, through the staff, is responsible for guiding inmates in making proper use of their funds to pay their obligations, including the payment of court costs, court appointed counsel fees, and court ordered restitution, and to provide for their dependent relatives, or to provide for their own medical, surgical, or dental treatment or services not generally provided by the state. The sum of money as provided by penitentiary rules and regulations from each inmate's earnings required to be deposited and accumulated by this section shall not be available to the inmate until discharge. The remainder of the inmate's earnings, including interest earned, shall be available to the inmate under the supervision and control of the warden or designee."

rary aid account was not available to the inmate until discharge.[3]

The computer ledger for Jensen's inmate accounts establishes that prison officials debited the $85 from his personal account and not from his temporary aid account. *Ennis* and the language of N.D.C.C. § 12–48–15(4), allowed the warden to guide inmates in making proper use of their funds to pay court costs from an inmate's personal account. The $85 was deducted from Jensen's personal inmate account after notice, an opportunity to be heard, and district court proceedings awarding those costs to the warden. Jensen's claim that the money was withdrawn without due process is meritless. *Weaver v. Toombs,* 948 F.2d 1004 (6th Cir. 1991) [due process and equal protection not violated by assessment of court costs against pro se prisoner litigants in civil rights action]. *See Beckler v. North Dakota Workers Compensation Bureau,* 418 N.W.2d 770 (N.D.1988) [except for unusual circumstances, due process requires notice and opportunity for hearing before a deprivation of liberty or property].

However, Jensen also asserts that the money in his inmate account was a tax refund from his Air Force pension and was exempt from process under federal law which provides, in part, that payments of benefits administered by the Secretary of Veterans Affairs "shall be exempt from the claim of creditors, and shall not be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, either before or after receipt by the beneficiary." 38 U.S.C. § 5301(a). *See also* 10 U.S.C. § 1440.

If federal law conflicts with the authority conferred by N.D.C.C. § 12–48–15, federal law controls under the Supremacy Clause. *Bennett v. Arkansas,* 485 U.S. 395, 108 S.Ct. 1204, 99 L.Ed.2d 455 (1988); *Rose v. Rose,* 481 U.S. 619, 107 S.Ct. 2029, 95 L.Ed.2d 599 (1987). Although the general principles for federal preemption are clearly established, here the undisputed underlying circumstances for Jensen's claimed exemption do not demonstrate that a reasonable person would have known that the individual state defendants' conduct violated clearly established law. *See Anderson v. Creighton* [whether law is clearly established requires assessment of factual circumstances confronting actor at the time of conduct]; 2 Nahmod, *supra,* at § 8.07 [fact specific inquiry for determining whether conduct violates clearly established law].

There is some authority that a party claiming an exemption must affirmatively claim it in a timely manner so that it may be properly exercised. *See Matavich v. Budak,* 4 Ohio App.3d 228, 447 N.E.2d 1311 (Ohio Ct.App. 1982); *First Nat'l Bank of Black ·Hills v. Beug,* 400 N.W.2d 893 (S.D.1987). *See generally* 31 Am.Jur.2d *Exemptions* §§ 308, 309 (1989). There is conflicting authority about whether exempt property that is commingled with other non-exempt property in a bank account retains its status as exempt property. *Compare Appanoose County v. Henke et al.,* 207 Iowa 835, 223 N.W. 876 (1929) [exempt property commingled with non-exempt property retains its status as exempt property] *with Citronelle–Mobile Gathering, Inc. v. Watkins,* 934 F.2d 1180 (11th Cir.1991) [exempt property commingled with non-exempt property loses exempt status]. *See also Porter v. Aetna Casualty,* 370 U.S. 159, 82 S.Ct. 1231, 8 L.Ed.2d 407 (1962) [veteran's benefits are exempt if they retain quality of money for support of veteran and are not converted into investment].

Here, Jensen did not claim any exemptions under federal law when the $85 in costs was assessed against him in the prior district court proceeding. Neither did he claim any federal exemptions before the $85 was debited from his personal inmate account on February 5, 1992. The computer ledger for Jensen's personal inmate account indicates deposits of $31 for "PEN PAY—EDUCATION" on February 12, 1992, and $436.50 for a "UST TAX REFUND" on February 24, 1992. Jensen's personal inmate account consisted of a tax refund which was commingled with his prison wages. Jensen's actual Air Force pension was not in his personal inmate

---

3. Section 12–48–15(4) was amended in 1993 to allow funds from an inmate's temporary aid account to be withdrawn prior to discharge "if authorized by the warden." 1993 N.D.Sess. Laws, ch. 115, § 1. That amendment was not retroactive. *Ennis v. Dasovick.*

account.[4] Assuming that Jensen's tax refund retained its status as exempt veteran's benefits and that federal law would have entitled him to claim an exemption from court costs for those benefits, the tax refund was not in Jensen's personal inmate account when that account was debited on February 5, 1992. After Jensen's tax refund was deposited in his personal inmate account, the individual state defendants were not informed that it was in any way derived from veteran's benefits until Jensen filed this action. The individual state defendants cannot be expected to know that Jensen was claiming a federal exemption without being notified of that fact. *Cf. Matter of Estates of Gustafson,* 381 N.W.2d 208 (N.D.1986) [for purposes of providing notice, personal representative cannot be expected to know temporary change of address of beneficiary without being informed of that fact].

■ Under these circumstances, we conclude that, as a matter of law, the individual state defendants were entitled to qualified immunity because the underlying factual circumstances confronting them did not demonstrate that a reasonable person would have known that their conduct violated clearly established federal law. Jensen's allegations that the individual state defendants conspired to deprive him of his property also fails for the same reason.

■ Jensen also claims that the individual state defendants violated prison regulations regarding inmates' legal mail. Those regulations require inmates' legal mail to be opened in the inmate's presence. *See Jensen v. Klecker,* 648 F.2d 1179 (8th Cir.1981) [privileged mail from an inmate's attorney may not be opened for inspection for contraband except in the inmate's presence]. Jensen alleged that prison officials refused "to show or give" him the envelope for some of his legal mail. However, he does not allege that his legal mail was opened outside his presence. The district court did not err in dismissing those claims.

4. With some limitations not relevant here, N.D.C.C. § 12–48–15(3) allows inmates to direct-

*STATE BONDING FUND*

The only reference to the State Bonding Fund in Jensen's complaint was:

"Co–Defendant State Bonding Fund is under the management of the ND Insurance Commission. To Collect from the fund by wrongful acts or doings by State Employees or Public Officials pursuant to NDCC 26.1–21–16, the fund must be a co-defendant."

Jensen essentially named the State Bonding Fund as a defendant for the purpose of paying damages incurred by the individual state defendants for their allegedly wrongful conduct. Because the individual state defendants have qualified immunity under § 1983, the trial court did not err in dismissing Jensen's action against the State Bonding Fund.

Moreover, N.D.C.C. § 26.1–21–06 limits the condition of the "blanket bond" created by N.D.C.C. ch. 26.1–26 to a "fidelity bond," which generally has been defined as a bond for losses arising from embezzlement, or the want of honesty, integrity, or fidelity by an employee or other person holding a position of trust. *See Estate of K.O. Jordan v. Hartford Accident and Indemnity Co.,* 62 Wash. App. 218, 813 P.2d 1279 (1991), *reversed on other grounds,* 120 Wash.2d 490, 844 P.2d 403 (1993); *Foxley Cattle Co. v. Bank of Mead,* 196 Neb. 587, 244 N.W.2d 205 (1976); *see generally* 35 Am.Jur.2d *Fidelity Bonds and Insurance* § 1 *et seq.* (1967).

■ The State Bonding Fund provides a source for payment of claims against public employees or officials for embezzlement of funds entrusted to them. The Fund is not intended to pay damages for the violation of constitutional or civil rights. Jensen has not alleged that any of the individual state defendants embezzled money entrusted to them, nor did he allege that the State Bonding Fund has deprived him of any constitutional or civil rights. Jensen's complaint fails to state a claim against the State Bonding Fund.

ly deposit income or funds from sources outside the penitentiary in an outside account.

## ATTORNEY'S FEES

The district court awarded attorney's fees to ACA and to the State under N.D.C.C. § 28–26–01(2), which provides:

"In civil actions the court shall, upon a finding that a claim for relief was frivolous, award reasonable actual and statutory costs, including reasonable attorney's fees to the prevailing party. Such costs must be awarded regardless of the good faith of the attorney or party making the claim for relief if there is such a complete absence of actual facts or law that a reasonable person could not have thought a court would render judgment in their favor, providing the prevailing party has in responsive pleading alleged the frivolous nature of the claim. This subsection does not require the award of costs or fees against an attorney or party advancing a claim unwarranted under existing law, if it is supported by a good faith argument for an extension, modification, or reversal of the existing law."

In *Peterson v. Zerr,* 477 N.W.2d 230, 236 (N.D.1991), the North Dakota Supreme Court outlined the standards for awarding attorney's fees under that statute:

"The statute allows the court discretion to award costs and attorney's fees if a claim is determined to be frivolous.... A claim is frivolous when there is such a complete. absence of actual facts or law that a reasonable person could not have expected that a court would render judgment in his favor.... Affirmance of a summary judgment on appeal does not mean that a claim is frivolous.... An award of attorney's fees under Section 28–26–01(2) lies within the sound discretion of the trial court, and its determination will be disturbed on appeal, only for an abuse of that discretion." [Citations omitted.]

Those standards parallel the requirements for awarding attorney's fees to prevailing defendants in § 1983 actions. *Hughes v. Rowe,* 449 U.S. 5, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980); *Christiansburg Garment Co. v. EEOC,* 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978).

 Our affirmance of the district court's judgment does not necessarily mean that Jensen's claims were frivolous. We recognize that the United States Supreme Court has stated that attorney's fees should rarely be awarded against pro se inmates. *Hughes v. Rowe.* In this case, Jensen's claims against the individual state defendants involved complex issues of qualified immunity, federal preemption, and the ramifications of the use of a tax refund from a federal air force pension to satisfy court costs under N.D.C.C. § 12–48–15(4). We cannot say that there was such a complete absence of actual facts and law that reasonable persons could not have expected that a court would render judgment in their favor. We conclude the district court abused its discretion in awarding $1,000 in attorney's fees to the State. Accordingly, we reverse that part of the judgment.

 However, we believe there was such a complete absence of actual facts and law to support Jensen's claims against ACA that a reasonable person could not have expected that a court would render a judgment in his favor. Open access to the courts is not synonymous with unlimited license to burden the resources of the judiciary and opposing parties with flagrantly groundless claims. *United Bank of Bismarck v. Young,* 401 N.W.2d 517 (N.D.), *cert. denied,* 484 U.S. 856, 108 S.Ct. 165, 98 L.Ed.2d 119 (1987). Jensen is an experienced pro se litigant. In other contexts, he has frequently raised issues devoid of merit. *See State v. Jensen,* 429 N.W.2d 445 (N.D.1988); *State v. Jensen,* 385 N.W.2d 478 (N.D.1986); *Jensen v. State,* 373 N.W.2d 894 (N.D.1985); *State v. Jensen,* 333 N.W.2d 686 (N.D.1983). His claims against ACA are totally devoid of merit. The district court did not abuse its discretion in determining that those claims were frivolous and in awarding attorney's fees to ACA.

 On appeal, ACA also asks for double costs, in part because Jensen failed to cooperate in preparing an appendix, and for attorney's fees. We believe that Jensen's persistence in pursuing his claims against ACA after being informed of their frivolous nature

by the district court, and in failing to cooperate in preparing an appendix, entitles ACA to double costs as well as attorney's fees in the amount of $250. *United Bank of Bismarck v. Young, supra.*

The district court judgment is affirmed in part and reversed in part.

CHRISTOFFERSON, District Judge, and ERICKSTAD, Chief Surrogate Judge, concur.